Van Pelt v. Knight et al.

ISAAC VAN PELT, Plaintiff in Error, v. HENRY KNIGHT et al., Defendants in Error.

ERROR TO COOK.

If A, executes a chattel mortgage stipulating that he may retain possession of the property, and afterwards, and before the debt becomes due, sells it to B, who agrees to pay the mortgage debt, and B, before the debt matures, mortgages the same property to C, who assigns to D; the first mortgagee taking possession of the property about the time the mortgage assigned to D, matures.  In an action of replevin to recover the mortgaged goods, brought by D, held, that as the assigned mortgage was given when the possession in B was consistent with it, and the secured mortgagee having full notice of the fact, not being imposed upon by the possession in B, that a verdict in favor of the first mortgagee, giving him the property, should not be disturbed.

THIS was an action of replevin commenced in the Cook Circuit Court, MANIERRE, Judge, presiding, tried by a jury, and a verdict in favor of the defendants.

The plaintiff below sues out this writ of error.

Replevin bond given and accepted by the coroner, the sheriff being a party to said suit.  Writ executed by coroner, by putting said plaintiff in possession of the greater part of the property mentioned in said writ, and by reading the same to the defendants.

Declaration contains one count in the *cepit*, with a count in trover added.  Demurrer filed by defendant, alleging that said *narr.* was insufficient in this—that a count in replevin in the *cepit* was joined with a count in trover; and second, that counts were joined in said *narr.*, which cannot by law be joined in the same *narr.*  Joinder of said demurrer by said plaintiff.  Demurrer overruled, and pleas filed by defendants.  First, *non cepit* and not guilty.  2nd, Property in John L. Wilson.  3rd, Property in Thomas Sherry.  4th, Property in Henry Chapman.  5th, Property in Henry Knight.  6th, Property in Henry Fuller.  7th, In Prentiss Law.  8th, In Enos Ayres.  Replication and similiter.

The issues thus joined came on to be tried, January 13th, 1858, whereupon the plaintiff read in evidence, a certain chattel mortgage of the property in question, consisting of furniture in the Burnet House, in Chicago, executed by Thomas Sherry, to Prentiss Law, and bearing date February 16th, 1857, and duly acknowledged and recorded on the 17th of February, 1857, made to secure the payment of two promissory notes of $500 each, with interest, to mortgagee or order, bearing even date with the mortgage, the first of said notes falling due six months from the date of said mortgage, and the second note in twelve months from the date thereof; said mortgage providing for the

possession of the property by the mortgagor until default should be made in the payment of said notes, or either of them, as they fall due, or unless said mortgagee, or his assigns, etc., should fear diminution, removal, or waste of said mortgaged property, or if said mortgagor should attempt to sell or assign the property, or if any writ issued from any court should be levied or attempt to be levied upon said mortgaged property, in any or either of said cases, the whole of the $1,000, with the interest, was to become due, and the mortgagee, his assigns, etc., were to take immediate possession of said property, and to dispose of it at public auction for cash, after giving three days' notice of the time, terms and place of sale, together with a description of the property, in some newspaper published in Chicago ; and out of the proceeds to pay the expenses, said notes with interest, and the overplus to the mortgagor.

These notes were indorsed by the mortgagee, Prentiss Law, to the plaintiff, and delivered to him, and the mortgage assigned and delivered to him, on the 30th of May, 1857. Plaintiff also offered and read in evidence, a certain execution in favor of Henry Fuller, against said mortgagor, Thomas Sherry, for $430.44, issued from the Cook county Court of Common Pleas, on the 21st of May, A. D. 1857, and placed in the hands of the sheriff of said county the same day, and levied on the property in question, May 23rd, 1857, as appears by the sheriff's return on the back of said writ.

Plaintiff's counsel then called *James Ryan*, who testified that he was the porter of the Burnet House in May, and in the early part of June ; saw men taking away the furniture ; saw the defendant, Knight, on the side-walk ; the goods brought back by the coroner were some of the same I had seen taken away ; was porter of the house at the time Sink was proprietor of it ; the name was the St. Nicholas Hotel ; the property removed was in the house when he, Sink, was proprietor ; I supposed he was owner of the property ; he claimed to be.

*Wm. Lefferts*, called by plaintiff, testified that he was clerk of the Burnet House ; went up to Burnet House on the 2nd of June, 1857, by order of plaintiff ; found Mr. Sloat there in charge of the goods remaining in the house ; he gave me the charge of the goods, and as my authority for retaining them in my possession, he gave me a chattel mortgage, and told me. to show it if any one offered to disturb me. The chattel mortgage hereinbefore described was shown to witness, who identified it as the one handed him by Mr. Sloat. I received many of the goods as they were returned ; they were the same that I had seen in the house before ; I had been in the house, and was familiar with many of the goods ; in talking with defendant,

Knight, about the damage done the goods, he said they were not damaged in moving, for he had superintended the loading of them himself; he told me he did not hide or take away anything till after the replevin writ was out; that he supposed they would come and compromise the matter.

*Henry Fuller*, called by plaintiff, said, " I was at the Burnet House about the last of May or first of June, 1857; they were removing the property; defendant, Knight, was putting it upon drays.

*William Horner*, called by plaintiff: Was employed on South Water street, Chicago, last May; about that time defendant, Knight, came there and asked Wm. S. Rowland if he could store some goods there; Rowland told him he could; the goods were brought between two and four o'clock in the morning; in the morning, when I went there, I found the store full of goods, and they were taken up stairs; the coroner came there with Ayres, and brought the goods away; they were brought from the Burnet House.

*Berdford Sloat*, called by plaintiff, and testified: I am a constable; I was requested by the plaintiff, last summer, to take custody of some goods; this chattel mortgage, already described, was put into my hands; my instructions were to take possession of the furniture at the Burnet House, and see that nothing was removed; I found Sink, Knight and Johnson there; I notified Johnson, who was there acting as officer or agent for these parties, that he must not remove any of the goods; showed him my papers, and he showed me what he had; it was the first or second day of June when I went there; think it was the first; when I got there, some of the goods were being removed; some were on drays; Sink had a book in his hand and was making memoranda of the goods they were taking out; they were exercising acts of ownership over the goods; Johnson showed me an indemnifying bond.

*Orsamus Van Patten*, called by defendants, and testified: I am acquainted with the furniture of the Burnet House, late St. Nicholas Hotel, and with the furniture that was in when Sink kept it; the same furniture remained in the house in May and June last; Sherry bought some himself while he was proprietor; I assisted in making a schedule of the property that was taken away by Sink and Knight; have a schedule of it; both papers are of property taken away from the house; I had been in the house as Knight's agent from the time Sherry took the house; I had charge of the furniture, and was seeing that none was taken away; such were my instructions; Knight claimed to be the owner of the furniture at that time; I acted in the capacity of agent from the 10th of January, 1857, till Sherry left the

35

house; Sink and Knight made a settlement, and Sink delivered the furniture over to Mr. Knight; this was before Sherry took possession; I had been in Knight's employ before this time, and was acquainted with all their transactions; Sink was indebted to Knight for indorsements, and for helping him to get the furniture; understood that indebtedness to amount to about $1,600; it was in reference to this indebtedness that this property was turned over to Knight by Sink; the property taken out of the house by Knight was some brought there by Sink.

Sink did not sell out to Sherry; he had a lease of the house from Ayres at that time; Sherry had the control of the house as far as the use of the furniture was concerned; I was in the store under the house, and boarded at the house; Sherry delivered up the furniture to Knight in my presence; this was in March, 1857, and said he wished Knight would remove the stuff out of the house, as he could not pay for it; Sherry was proprietor of the house, and was keeping it; I went in and out as the other boarders did; I was there more than the other boarders; had other business to transact for him besides this; Knight told me he wanted me to keep watch of the furniture and things; Sherry was not told my instructions; when Sherry's notes fell due, which he had given Knight for the furniture, I went up to the hotel and dunned him for the amount; talked with Sherry several times about it; he said he had bought the furniture, but could not make the payments as he had agreed; I knew that to be the fact; went several times to get three hundred dollars that had fallen due; at length he said he would deliver the furniture over to Knight, and as fast as he chose to remove it, he would replace it by new articles; Sherry delivered the goods to Knight some time in March; I believe Knight had a mortgage for the goods, and sold them to Sherry, subject to the mortgage; Knight took possession under a mortgage—a mortgage from Sink to Knight; I continued to board at the Burnet House till after Sherry left it.

Have some definite knowledge of the sale; Sherry was to have the furniture of Knight when the mortgage was paid up; I continued in possession of the property till it was removed from the house; Sink agreed to deliver up the furniture to Knight, provided Knight would pay the balance of the mortgage; Sherry had knowledge that Knight claimed the furniture from the time he went in there; Sink wished Knight to take possession.

This delivery was before the sale to Sherry; I don't know whether the mortgage from Sink to Knight was given to secure the draft.

*Prentiss Law*, called by defendants, and testified: I am the

mortgagee in the mortgage from Thomas Sherry to Prentiss Law; I executed the assignment of the mortgage to the plaintiff, Van Pelt; negotiated the transfer with Enos Ayres; think the assignment was executed about the 30th of May, 1857; these notes shown me are the notes given to me, and accompanying the mortgage; I had advanced to Sherry, at the time the mortgage was given, the amount of $700; these advances were partly in money and partly in groceries; at one time I advanced in money $250; part of the money was advanced before the mortgage was given; the $250 was advanced in February or March; Sink was with me at the time; it was before giving the mortgage; I received a note as collateral security at the time, and gave it back to him afterwards; on receiving the mortgage, I gave him $250 more; I received an order of Sherry on me for $300, from Henry Chapman, and I declined paying it.

Defendants next offered in evidence a certain chattel mortgage, executed on the 17th of March, 1856, by Andrew J. Sink, to Henry Knight, one of said defendants, together with the schedule of property embraced in said mortgage, including the property in controversy, executed as aforesaid, to secure the payment of a bill for $1,568.80, dated March 15th, 1856, and payable in one year from the date thereof, with interest, and also three other promissory notes, one for the sum of $809, payable in April then next, another for the sum of $809, payable in August then next, another for the sum of $775, eight months after date. Said mortgage provided for the possession of the property to remain with the mortgagor till the time of payment, and if default in payment as aforesaid should be made, it provided that said Knight, or his representatives, should have the right to take possession of said goods, and to sell them at public or private sale, to the highest bidder, for cash, after giving ten days' notice of the time, place and terms of sale, with a description of the goods, by at least three advertisements, posted in public places in the vicinity, to make the sums of money promised as aforesaid, together with the costs and expenses, etc., and to pay the overplus, if any, to Sink. To the reading of this said mortgage in evidence, plaintiff's counsel objected, because the mortgagee, Knight, had permitted the mortgagor, or his vendee, to remain in possession of the mortgaged property, after the time limited for such possession by said mortgage; but the said judge overruled the objection, and permitted the mortgage and schedule to be read in evidence, to which ruling of the court plaintiff's counsel then and there excepted.

*Orsamus Van Patten,* was called by defendants' counsel, and testified: That the property described in the last mentioned mortgage, was the same that was in the St. Nicholas Hotel.

*J. Vogal,* re-called, testified : That he got up the schedule referred to ; it was of the furniture in the St. Nicholas Hotel ; Sink was then proprietor of the house ; Sink took away a large proportion of furniture from the house when he left ; I know nothing of what Sherry may afterwards have put in.

*James Ryan,* re-called by plaintiff, testified : I knew of no one about the house who had or claimed control over the furniture while Sherry was proprietor ; so far as I know, Sherry had complete control ; Van Patten slept in the store (under the hotel) just before the house was closed ; slept there one or two months ; he was not much in the hotel, except when he came to get his meals ; I should have seen him if he had claimed or exercised any control over the goods ; he did not seem to have any more control over them than any other boarder ; he slept in the store under the hotel.

*H. L. Seward,* called by plaintiff, testified : I boarded at the Burnet House from the first of March till Sherry left ; this was nearly three months ; I roomed there ; was there a good share of the time during the day ; am acquainted with Van Patten ; he boarded there during the time I speak of ; he may have been there all the time ; if Mr. Van Patten had any control in the house, or had charge of any furniture in it, I did not know it ; he never let any one know it, that I am aware of ; he was not about the house more than other boarders ; I never saw or heard anything from or about him that led me to suspect that he had any charge of the furniture as agent ; I knew nothing about Sink or Sherry delivering up property to Knight ; understood Knight had more or less claim on them.

*H. T. Barlow,* called by plaintiff, testified : I commenced an engagement with Sherry as clerk (of Burnet House) in the month of April, 1857, and continued with him till the house closed, about the first of June ; knew Van Patten ; he boarded there when I first came to the house ; he had a room in the house ; he boarded there all the time except for the last eight or ten days before the house closed ; my impression is that he did not board there during those days, and that he was not in the house at all ; don't know whether he slept in the store under the hotel ; Sherry was proprietor till the house closed ; Van Patten never had any control in the house that I ever heard of ; I was clerk, and was there all the while ; I heard nothing that led me to suppose or have any suspicion that he had any control there ; don't remember making any bill against Van Patten ; he was boarding there on Knight's account, and I paid no attention to his account.

*Thomas Sherry,* called by plaintiff, testified : I bought the furniture of Sink, and assumed the payment of debts due from

him to Knight, but did not make all the payments according to agreement; made the first and second, but not the third; I owe Sink $400, and also the Knight mortgage of $1,500; I never delivered the goods in the Burnet House to Knight or to Mr. Van Patten at any time; no arrangement was ever made by which Van Patten was to have possession for Knight; did not know that Van Patten was the agent for Knight in regard to the furniture; I never told Knight he might take the furniture away; recollect that I never told him so; supposed that Knight had a claim; I assumed one; Knight told me that Van Patten was a partner of his in the clothing business; traded Van Patten's board out for clothing; settled with him after the house closed; he was not charged with full board up to the time the house was closed.

*Orsamus Van Patten,* re-called. I remained as a boarder at the Burnet House until it was closed.

Instructions asked by plaintiff, but refused by the court:

If the jury believe, from the evidence, that the property in question is the property conveyed by the chattel mortgage, executed by Thomas Sherry to Prentiss Law, February 16th, 1857, and if the jury further believe, that said mortgage was executed to secure the payment of a *bona fide* debt, and assigned by said Law to the plaintiff in good faith, for a valuable consideration, they should find for the plaintiff, if they believe, from the evidence, that any of the conditions had happened, upon which the mortgagor or his assigns were authorized by said mortgage to take possession of the mortgaged property.

The possession and control of personal property are the strongest proofs of ownership; and if the jury believe, from the evidence, that the defendant Knight allowed Thomas Sherry to exercise those badges of ownership over personal property mortgaged to said Knight, after default made in the payment of the money at the time it was secured to be paid by his mortgage, said mortgage became void and of no effect as to subsequent creditors and third parties.

If the jury believe, from the evidence of the witness Van Patten, that the defendant Knight maintained any such possession of the goods and chattels in question, as is claimed by him, through the agency of said witness, such possession was a fraud upon third parties, those dealing with and trusting said Sherry upon the credit of the personal property which he seemed to possess, and such claim of possession by said Knight should be disregarded by the jury.

If the jury believe, from the evidence, that the chattel mortgage purporting to be executed by Thomas Sherry to Prentiss Law, and assigned by the latter to Van Pelt, the

plaintiff in this suit, was executed and assigned as it purports to be, said mortgage shows the legal title to have been in the plaintiff at the time this suit was commenced, and the legal title to the property in question is sufficient for the purposes of maintaining this suit, though the jury may believe that parties other than the plaintiff had an equitable claim upon said property, or even upon said mortgage itself.

If the jury believe, from the evidence, that Knight did not take possession of the property covered by the Sink mortgage, until two months or more after the last note mentioned in said mortgage matured, and that there was no provision in the mortgage for possession remaining in the mortgagor after the maturity of the last note, then if the jury believe the Law mortgage *bona fide,* and that the assignment to the plaintiff was made for a valuable consideration, on the 30th day of May, 1857, the plaintiff is entitled to recover as against any title derived through the Sink mortgage.

Instructions given by the court on behalf of plaintiff, and excepted to by his counsel:

If the jury shall find, from the evidence, that Knight did not take possession under his mortgage, of the property in question, after the notes secured by it had fallen due, and that before Knight took possession under his mortgage, the plaintiff claiming to hold the title to the goods took possession thereof under the Sherry mortgage, assigned to him, then the plaintiff is entitled to a verdict, if it is shown that the contingency had happened upon which plaintiff was entitled to possession under his mortgage.

If the jury believe, from the evidence, that the legal title to the goods in question was in the plaintiff, and that he was entitled to the possession of them at the time this suit was commenced, the plaintiff is entitled to recover, notwithstanding the equitable title might have been in Mr. Ayres, or any one else.

If the jury shall find that the defendant Knight's mortgage is entitled to preference over the plaintiff's mortgage, yet if the jury shall find also that any portion of the goods in question were included in plaintiff's mortgage, which were not included in Knight's mortgage, then the plaintiff is entitled to recover as to such part, and his damages, if any, he has shown in respect thereto, specifying the part of the goods so found in their verdict.

Instructions asked by defendants' counsel, and given by the court, but excepted to by plaintiff's counsel:

That in this action the plaintiff must show, in order to recover, that at the time of commencing this suit he was the legal owner

of the property in question, and entitled to the possession thereof.

If the jury believe, from the evidence, that the mortgage given in evidence by the plaintiff, was fraudulent and void in its origin, or that the same was kept on foot afterwards for the purpose of fraudulently hindering or delaying any other mortgage or purchase in good faith, of the same property, and that at the time of making the assignment by Law to plaintiff, and read in evidence, Enos Ayres was acting as the agent, or on behalf of the plaintiff, with assent of plaintiff respecting said assignment, and he had any knowledge of such fraudulent origin, or participated in the fraudulent continuance of said mortgage aforesaid, the said mortgage is void, and the plaintiff cannot make a legal title to the property included therein by virtue of said mortgage, as against any person claiming or possessing title thereto.

That if the jury believe, from the evidence, that the mortgage given by Sherry to Law was made in good faith, and that Law had a right to take the property in question at the time of the assignment and sale, yet, if at the time of and before the assignment and sale executed by Law to the plaintiff, the defendant Knight had taken possession by himself or his agents, of the property in question, and held the same adversely under his mortgage, Prentiss Law could not transfer the property to the plaintiff so held adversely, so as to give him a title to maintain a suit to the same, and the law is for the defendants.

Instructions given by the court for the defendant in addition to the above, and excepted to by plaintiff's counsel:

If the jury shall find, from the evidence, that Knight held a prior valid mortgage on the goods in question, and that the debt secured thereby was not due at the time plaintiff's mortgage was given, then the jury will find for the defendants, if they shall also find, from the evidence, that Knight took possession under his mortgage before the plaintiff obtained his assignment, and proceeded to obtain possession under his.

If the jury find, from the evidence, that at the time the mortgage under which the plaintiff claims was given, the mortgage under which defendant Knight claims was not due, and that by the terms thereof, Knight was not entitled to the possession until sometime after the mortgage assigned to the plaintiff was given, and that both mortgages covered the same goods, then the Knight mortgage was not void as to creditors and subsequent mortgages of Sherry. And if the jury shall find, from the evidence, that Knight took possession under his mortgage, and commenced to remove the property in question, before the plaintiff had taken possession under his mortgage, then the jury will find for the defendants.

D. P. Wilder and Monroe & Spencer, for Plaintiff in Error.

W. K. McAllister, for Defendants in Error.

Caton, C. J. Sink, the original owner of the property, on the 17th of March, 1856, executed a chattel mortgage upon it, to secure a debt due, one year from that date, which provided that the mortgagor should retain possession till default in the payment should be made. Afterwards, and before the debt became due, Sink sold the property to Sherry, subject to the mortgage, and he agreed to pay the mortgage debt. On the 17th of February, 1857, and before the first mortgage matured, Sherry mortgaged the same property to Law, to secure a debt of $1,000, which was to run one year, and provided, that the mortgagor should retain the possession till default should be made in the payment; also, providing that if the mortgagee or his assigns should fear waste or diminution of the property, or if mortgagor should attempt to sell or remove the property, or if any execution or writ should be issued and levied, or be about to be levied upon the property, then the mortgagee might take possession of and sell the property for the payment of his debt. An execution in favor of one Fuller and against Sherry, was, on the 21st May, 1857, issued and placed in the hands of the sheriff. On the 30th of May, 1857, Law assigned the last mortgage to Van Pelt, the plaintiff. Van Patten swears that Sherry delivered up the possession of the property to Knight, under the first mortgage, in March, 1857, but it is certain that Knight suffered the property to remain in the ostensible possession of Sherry till about the time of the assignment of the second mortgage, by Law to Van Pelt. The evidence on this point was somewhat conflicting, and such as would have justified the jury in finding either way. And from the instructions which the court gave, the whole question was made to turn on this single point. For the plaintiff, the court gave this instruction : " If the jury shall find, from the evidence, that Knight did not take possession under his mortgage, of the property in question, after the notes secured by it had fallen due, and that before Knight took possession under his mortgage, the plaintiff claiming to hold the title to the goods took possession thereof under the Sherry mortgage, assigned to him, then the plaintiff is entitled to a verdict, if it is shown that the contingency had happened upon which plaintiff was entitled to possession under his mortgage." And for the defendant, the court instructed : " That if the jury believe, from the evidence, that the mortgage given by Sherry to Law was made in good faith, and that Law had a right to take the property in question at the time of the

assignment and sale, yet if, at the time of and before the assignment and sale executed by Law to the plaintiff, the defendant, Knight, had taken possession by himself or his agents, of the property in question, and held the same adversely under his mortgage, Prentiss Law could not transfer the property to the plaintiff so held adversely, so as to give him a title to maintain a suit to the same, and the law is for the defendants." There certainly can be no just exception taken to this law. When the second mortgage was given, the possession was consistent with it, and Law took it, with full notice of it, and subordinate to that incumbrance. The continuing possession by the mortgagor after forfeiture, was no fraud or injury to him, for he was induced to take no step by reason of such continuing possession. He was not misled by it. It could not transpose the priority of the mortgages, and make the junior first in point of merit. Not so with Van Pelt, his assignee. If, when he bought, the first mortgage was overdue and the mortgagor still in possession, he had a right to suppose that the first mortgage was paid. When he saw the property in the possession of the mortgagor, when such possession was inconsistent with the terms of the mortgage while unsatisfied, he had a right to act on the supposition that it was no longer a lien. We are satisfied that the case was fairly put to the jury by the court, and although we should not complain of the verdict had it been the other way, we think we ought not to disturb it.

The judgment must be affirmed.

*Judgment affirmed.*