## W. W. Kimball Co. v. John Piper.

### Gen. No. 4245.

1. CHATTEL MORTGAGE—*constructive notice of.* A person takes a chattel mortgage or a bill of sale subject to an outstanding, unmatured chattel mortgage, notwithstanding he has no actual notice thereof, if such chattel mortgage sufficiently describes the property and it was duly entered and recorded.

2. CHATTEL MORTGAGE—*when presumption of payment of, will be indulged.* A person purchasing chattel property months after the maturity of a mortgage appearing of record against it, may rely upon the presumption that such mortgage has been discharged, and will be protected in his purchase, unless the mortgagee has since the maturity of the mortgage debt, exercised reasonable diligence to locate and obtain possession of such property; and the burden of proving such diligence rests upon the mortgagee.

3. CHATTEL MORTGAGE—*effect of filling blanks in, after recording.* A mortgage, ineffective as notice to third parties for want of a sufficient description of the property when entered and recorded, can not be made effective notice as to such third parties by thereafter writing into the original instrument the necessary descriptive words.

4. CHATTEL MORTGAGE—*rights of mortgagee under a.* A chattel mortgagee cannot, as against a purchaser of the mortgaged property, claim the rights of an absolute owner, but such purchaser may pay the balance of the mortgage debt and retain possession of such property.

5. CERTIFIED COPIES—*when competent as original evidence.* A certified copy of a chattel mortgage is competent for the purpose of proving additions made to the original instrument, already in evidence, since its execution.

6. INSTRUCTIONS—*should be confined to issues.* Instructions which do not relate to the issues need not be given.

7. INSTRUCTIONS—*estoppel to complain of.* A party is precluded from claiming that the court erred in giving instructions upon a particular theory when he has asked for and had given an instruction upon such theory.

Action of replevin by chattel mortgagee. Appeal from the Circuit Court of Stephenson County; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the April term, 1903. Affirmed. Opinion filed October 8, 1903.

R. R. TIFFANY and J. A. CRAIN, for appellant.

GRAY & BUNGE, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This was an action of replevin for a piano, brought by W. W. Kimball Company against John Piper, before a justice. In the Circuit Court, on appeal, defendant had a verdict, assessing his damages at $150. He remitted all the damages but one cent, and had judgment for one cent and the costs, and for a return of the property. Plaintiff appeals.

The instrument was a Hallett & Davis upright piano, No. 44,828, style 6. Hallett & Davis Company made it and sold it to Harry Taylor, one of its employees in Chicago. After he had paid nearly half the purchase price, he and his wife separated, and he gave the piano to her and she gave the company her note for the balance of the purchase price, payable in installments, and secured it by a mortgage upon the piano, which was acknowledged, entered, and recorded in Cook County. A few payments were made thereon. At some time not stated that company assigned this note and mortgage to the Kimball Company. Taylor and wife resumed marital relations, and removed with the piano to Downer's Grove, DuPage County, where Taylor entered the employment of the Stauber Piano Company, which had a factory there. Thereafter Charles Jacobson, superintendent of that factory, guaranteed Taylor's note for $100 at a bank, and took a mortgage from Taylor and wife on the piano to secure him for that liability, but by the erroneous number 44,262. Jacobson afterward learned that Taylor and wife intended to remove from the county, and in December, 1900, he caused a constable to seize the piano under his mortgage, and had it taken the next day to the factory of the Stauber Company, where it was placed with some fifty of their pianos. It remained there till March. On December 31, 1900, Taylor and wife gave Jacobson a bill of sale of the piano by its true number. On March 4, 1901, about the maturity of Taylor's bank note, Jacobson paid it, except a small sum Taylor had previously paid upon it. Jacobson then

caused the piano to be shipped to C. Marshall, clerk of the Stauber Company in Chicago, and Marshall shipped it to George Brown of Ashton, Lee County, Illinois. Brown was Jacobson's father-in-law. Jacobson testified that he sold the piano to Brown for $115, and Brown paid him soon after he received the instrument; but at a former trial he testified that he shipped the piano to Brown to sell for him. John Piper lived in Freeport and had three daughters, and though he had a piano, he desired to buy another for his eldest daughter, who was married and lived in Ogle County. Piper learned of this piano, and at his request, his daughter went to Ashton on April 13, 1901, to see whether she liked the instrument. Piper testified that about the last of May he wrote Brown that he would take it. At some later date he paid Brown $150 for the piano, and it was shipped to him the last of September or first of October, and was still in his house when replevied in this action on November 21, 1901, without previous demand.

The proof is clear that when Jacobson took his mortgage and when he seized the piano, and when he obtained the bill of sale from Taylor and wife, he had no knowledge of the prior mortgage from Mrs. Taylor to the Hallett & Davis Company, under which plaintiff claims. But Jacobson took mortgage and title before the maturity of plaintiff's mortgage and, therefore, subject thereto, notwithstanding he had no notice thereof, if plaintiff's mortgage sufficiently described the property and was duly entered and recorded. It is also clear Piper bought without knowledge of plaintiff's mortgage. The last installment secured by plaintiff's mortgage matured April 1, 1901. Piper bargained for the piano nearly two months after that date, paid for it still later, and received it six months after plaintiff's mortgage matured. If he had bought at that time with full knowledge of the giving of plaintiff's mortgage, he would have had a right to presume it was paid, and would be protected in his purchase, Van Pelt v. Knight, 19 Ill. 535, 545; Arnold v. Stock, 81 Ill. 407, 410; Hewitt v. General Electric Company, 164 Ill. 420, at least unless

the prior mortgagee had exercised reasonable diligence to locate and obtain possession of the property when and after the mortgage debt fell due, and had been unable by such diligence to find it. The trial court adopted plaintiff's theory on this subject, and by plaintiff's third given instruction told the jury that plaintiff's delay in taking possession of the piano was no defense to this action, if plaintiff used due and reasonable diligence to locate and obtain possession of the piano after its mortgage matured, thus practically holding that the rule stated was not affected by the fact that Piper bought in good faith, long after plaintiff's debt was due. Under this instruction, the verdict of the jury was equivalent to a finding that plaintiff did not use reasonable diligence to locate and obtain possession of the piano after the maturity of the last installment of its debt.

As against Piper, a purchaser after the maturity of the mortgage, plaintiff, seeking possession of the property nearly eight months after its debt became due, had the burden of proving that from the date its debt became due to the date of its replevin writ, that is from April 1 to November 21, it used reasonable diligence to locate and obtain possession of the piano. Before April 1, namely, about February 13, 1901, Alley, an agent of plaintiff, visited Downer's Grove, and had an interview with Jacobson. Alley in one place in his testimony implied that Jacobson said he had formerly had the piano; but other things said and done and testified to by Alley, and the testimony of Jacobson, warrant the conclusion that Jacobson told Alley that the piano was then in his possession. Each claimed under a mortgage, and they went together before a justice and stated to him their respective claims. Alley then demanded the piano of Jacobson. Alley testified that Jacobson refused to surrender it. Jacobson testified that he made no reply, but went away. Alley testified that he had before that talked with Mrs. Taylor in Chicago, and learned that Jacobson had taken the piano; that after that he visited Downer's Grove several times, looking for pointers,

and that he brought replevin for the piano there, but did not serve the writ because he could not find the piano; but he does not state when these visits were made or this writ sued out, nor against whom the writ was directed; nor does he state a single thing he did toward trying to find the property. Apparently what he did there was before April 1. He knew Jacobson either had the piano or knew where it was. He does not testify that he asked Jacobson where he was. He does not claim to have sought information from Taylor, who worked for the Stauber Company, and was likely to know the piano was stored there. These were two most obvious sources of information. Alley testified that between the time when he saw Jacobson at Downer's Grove in February and the October following, he worked on the business of locating this piano when he had any leisure time; but he did not state what leisure time he had, nor that he had any, nor what time he actually spent in this matter, nor anything that he did between April 1 and October. In October he took certain steps which enabled him to trace the piano. But plaintiff could not stand idle from April 1 to October, and thereafter take the piano from an innocent purchaser who bought it long after the maturity of plaintiff's debt. If plaintiff had taken prompt. steps after April 1 to find its piano, it is a fair inference from the proof that it would have found it before Piper bought it. The proof does not disclose a single act by plaintiff between April 1 and October looking toward the recovery of this piano, except the inquiry in the East for piano No. 44,262, hereinafter referred to. It follows that plaintiff did not show that it exercised the diligence required of it by law, and the proof on this subject required the verdict for defendant.

Plaintiff introduced in evidence its mortgage, describing the piano by its number and style, with the certificate of recording upon said mortgage, thus apparently proving that when the mortgage was recorded it contained that description. Defendant introduced a certified copy of the record of that mortgage, and it did not contain the number or

style of the piano, thus showing the number and style had been inserted after the mortgage had been executed, acknowledged, entered by the justice, and recorded in the recorder's office. Plaintiff urges a certified copy is only competent where the original is lost or not in the power of the party wishing to use it. The certified copy was only offered to show that that which plaintiff had already introduced as the original had been added to after it was recorded, and that the certificate of record on the back of the original was being misused to make court and jury understand a description was in the mortgage when executed, entered and recorded, which in fact had not been in the instrument when those acts were performed. But there was a blank space in the description in the mortgage for the number and style, and it is argued that by executing the mortgage in that condition, Mrs. Taylor gave implied authority to fill those blanks. That may be true as between plaintiff and Mrs. Taylor, but the statute required that the property should be described in the mortgage, that the description should be entered on the docket of the justice who took the acknowledgment, and that the mortgage containing that description should be recorded in the recorder's office; and this entry and record is made notice to third parties of what it contains, but not of what is added to the instrument after it is so entered and recorded. A mortgage ineffective as notice to third parties for want of a sufficient description of the property therein when entered and recorded, could not be made effective notice to such third parties by thereafter writing into the original instrument the necessary descriptive words, even if done by the mortgagor herself. The court did not err in admitting the certified copy of the record to show how the mortgage in fact read when entered and recorded, and to show what notice the record in fact gave.

Plaintiff's mortgage, when executed, acknowledged and recorded, described the property as follows: " One upright piano made by Hallett & Davis Mfg. Co. No.——, style ——." The description in the entry on the justice's docket

was " one upright piano made by Hallett & Davis Co."
The statute requires that the entry on the justice's docket
shall contain a description of the property to make it valid
against strangers. Koplin v. Anderson, 88 Ill. 121. The
proof shows that this description would apply with equal
force to every upright piano made by the Hallett & Davis
Company, while if the mortgage had further described it as
" No. 44,828, style 6," this would have distinguished it from
every other piano in the world. It is argued by defendant
that because of this defective description, the entry and
record did not give defendant constructive notice, and for
want of such notice the mortgage was void as to defendant.
The court admitted plaintiff's mortgage in evidence, and no
instruction was offered raising the question whether it con-
tained a sufficient description, and defendant has assigned
no cross-error questioning the action of the court in admit-
ting it. As we have held that for lack of proof of reason-
able diligence in endeavoring to find and obtain possession
of the piano after the maturity of its note, plaintiff was not
entitled to recover, we deem it unnecessary to determine
the sufficiency of the description as a matter of law.

The court properly refused to permit plaintiff to introduce
in evidence a letter from a Boston party, giving the history
of Hallett & Davis piano No. 44,262, the number errone-
ously inserted in Jacobson's mortgage. Plaintiff may have
been entitled to show it wrote a letter on that subject, and
was delayed a certain number of days awaiting a reply, but
the facts elicited by that correspondence could only be
proven by testimony under oath. The court was liberal to
plaintiff in rulings upon testimony, and we find no serious
error against plaintiff in that respect.

Plaintiff's first refused instruction stated that one execut-
ing a mortgage with blanks necessary to be filled to make
it perfect, thereby agrees the blanks may be filled, and that
the filling of the blanks by plaintiff was not a material al-
teration. This would tend to lead the jury to understand
that an imperfect description could be cured, as to Piper,
by the insertion of a perfect description after the instru-

ment had been entered and recorded, and this we hold is not the law. Plaintiff's second refused instruction sought to subject Piper, a purchaser long after the maturity of plaintiff's mortgage debt, to the same rule applicable to Jacobson, a purchaser long before such maturity, and was therefore properly refused. Plaintiff's third refused instruction related to the question whether Piper would have a remedy against any one if he should be defeated in this action. That was not an issue here, and the court was not required to instruct upon that subject. Defendant's first given instruction correctly stated the law that a chattel mortgage must be acknowledged, entered and recorded in the county where the mortgagor resides, in order to be valid as to third parties. It contained no suggestion that upon the mortgagor removing to another county, the mortgage must then be recorded there, and if plaintiff feared the jury might think so, it should have asked an instruction on that subject. Defendant's second given instruction stated the necessity for a demand, but excused a demand if defendant set up title in himself, and was in harmony with plaintiff's second given instruction on that subject. Plaintiff can not be heard to say that no instruction on a demand should have been given, for it asked and obtained an instruction on that subject. The court having instructed as it did in favor of the defeated party that no demand was necessary if defendant claimed title, we are not called upon to decide whether a demand was necessary in this case; but we may suggest that if plaintiff had been entitled to the piano, its rights would not have been those of an absolute owner; that it would have been entitled only to the unpaid balance of its mortgage debt; and that if demand had been made, Piper would have had a right to pay that sum and thereupon retain the piano. We find no reversible error in the record. The judgment is therefore affirmed.

*Affirmed.*