## Isaac S. Jones

v.

## George D. Ramsey et al.

1. Mortgage—Notes not due—Sale for default in interest.— A mortgage providing that "in case of default in the payment of the said note above mentioned, or any part thereof," that the trustee might advertise and sell the premises, and apply the proceeds, first to payment of expenses, second to the payment of amount due on said note, etc., does not make the whole sum due on default in payment of interest, and a trustee cannot, under such a power, sell and apply the proceeds on notes not due, nor can a court decree that mortgaged premises be sold subject to the lien of the unpaid balance.

2. Parties in interest.—Under such a mortgage, the assignee of the equity of redemption, though he may have assumed payment of the mortgage, has such an interest that he may object to a decree requiring him to pay the whole sum within thirty days. It is his right to pay off the indebtedness as it falls due, and he cannot be required to pay it except as stated in the deed.

3. Enjoining proceedings at law.—Courts of chancery will not on a bill filed by the plaintiff in an action at law, enjoin the defendant therein from making his defense to such action at law, and yet allow the plaintiff to proc ed. The plaintiff having elected his forum, should, if he discovers he has commenced in the wrong forum, abandon his action.

4. Foreclosure in chancery—Redemption.—The statutes of the State existing at the time the mortgage was executed, entered into and became a part of the contract between the parties, and the statutory right of time to redeem in case of a foreclosure is a right in which the grantee of the mortgagor has an interest. So, where the mortgage is foreclosed by proceedings in court, such foreclosure must be in conformity with the statute, though the deed conferred power upon the trus'.ce to sell; and the court had no authority to substitute another trustee in place of the one named by the parties, and order a sale within thirty days, without equity of redemption.

5. Fixtures—What passes under the mortgage—Extraneous proof.—The court does not pass upon the question whether the machinery

in the mill on the mortgaged premises passes to the mortgagee, farther than to say that, in this respect, the mortgage viewed in the light of the *status* of the property and the surrounding circumstances, must speak for itself as to what was included, and proof of a contemporaneous arrangement to change the legal effect of the mortgage is not admissible. The question as to whether certain articles are or are not fixtures, depends largely upon the intention of the party attaching them.

APPEAL from the Circuit Court of Clay county; the Hon. JOHN H. HALLEY, Judge, presiding.

Mr. RUFUS COPE, for appellant; that a decree of sale for accrued interest only could be made, but the surplus cannot be retained, nor can the mortgaged premises be sold subject to the lien of the unpaid balance, cited Hards v. Burton, 79 Ill. 504.

The court erred in decreeing a sale of personal property not described in Ramsay's mortgage. The machinery in the mill is personal property: Brown v. Lillie, 6 Nev. 244; Kirwin v. Latour, 1 Harr. and J. 289; Fullam v. Stearns, 30 Vt. 443; Gale v. Ward, 14 Mass. 352; Rogers v. Brokaw, 25 N. J. Eq. 496; Vanderpool v. Vanallen, 10 Barb. 157; Murdoch v. Harris, 20 Barb. 409; Pierce v. George, 108 Mass. 78; Hill v. Wentworth, 28 Vt. 429; Blanche v. Rogers, 26 N. J. Eq. 563.

Being personal property, it could only be held by a chattel mortgage under the statute: Murdock v. Gifford, 18 N. Y. 28.

A supposition of the parties that the machinery was included in the mortgage, is a mistake of law and not remediable in equity: Goltra v. Sanasack, 53 Ill. 456.

Mr. W. B. COOPER and Mr. BEN. HAGLE, for appellees; contended that no party in appellate court can complain of an error not affecting his interest, and cited Tibbs et al v. Allen, 27 Ill. 119; Clark v. Marfield, 77 Ill. 258; Van Valkenburg v. Trustees of Schools, 66 Ill. 103; Smith v. Hickman, 68 Ill. 314; Richards v. Greene, 78 Ill. 525; Hedges v. Mace, 72 Ill. 472; Fonville v. Sausser, 73 Ill. 451.

The defendant in the replevin suit, though enjoined from defending, would have the right to contest the assessment of damages, the same as on a default: Anderson et al v. Semple,

2 Gilm, 455; C. & R. I. R. R. Co. v. Ward, 16 Ill. 522; Town of South Ottawa v. Foster, 20 Ill. 296; C. & St. L. R. R. Co. v. Holbrook, 72 Ill. 419; Chicage & Iowa R. R. Co. v. Baker, 73 Ill. 316.

As to what constitutes fixtures: Winslow v. Merchants Ins. Co. 4 Met. 306; First Parish in Sudbury v. Jones, 8 Cush. 187; Symonds v. Harris, 51 Me. 14; Laflin v. Griffith, 35 Barb. 58; Burnside v. Twitchell, 43 N. H. 390; Walmsley v. Milm, 7 C. B. (N. S.) 115; McCreary v. Osborne, 9 Cal. 119; Christian v. Dripps, 28 Penn. 271; Walker v. Sherman, 20 Wend. 636; Parson v. Copeland, 38 Me. 547; Baker v. Davis, 19 N. H. 325; Vorhis v. Freeman, 2 Watts & Serg. 116; Pyle v. Pennock, 2 Watts & Serg. 390; Harlan v. Harlan, 15 Penn. 507; McKenna v. Hammond, 3 Hill, 331; Bratton v. Clawson, 2 Strobh. 478; Snedecker v. Warning, 2 Kernan, 170; Despatch Line of Packets v. Bellamy M'f'g Co. 12 N. H. 205; Farrar v. Stackpole, 6 Greenl. 157; Full v. Walter, 28 Me. 545; Corliss v. McLayin, 29 Me. 115; Faris v. Walker, 1 Bailey, 541; Button v. Clawson, 2 Strobh, 478; Powell v. M. & B. M'f'g Co. 5 Mason, 467; Kirwan v. Latour, 1 Harr & J. 289; Gray v. Holdship, 17 Serg. & Rawle, 413; Morgan v. Athur, 3 Watts, 140; Lemar v. Miles, 4 Watts, 330; Walker v. Sherman, 20 Wend. 636; McDaniel v. Moody, 3 Stewart, 314.

Baker, J. Davis, Adams and Pritchett owned a small parcel of land, upon which was standing a woolen mill containing a quantity of machinery of considerable value. The mill and machinery were also owned by them. In March, 1876, they executed and delivered to Ramsey a mortgage, with power of sale, upon the piece of land, describing it by metes and bounds. This mortgage was given to secure the payment of a promissory note for $2,400, executed by them to Ramsey, bearing same date, and due in three years, with interest at the rate of ten per cent. per annum—interest payable semi-annually. Subsequently they executed to appellant, Jones, a second mortgage of a similar character, on the same property, to secure the sum of $1,100. They failed to pay Ramsey the installments of interest due him in March and September of 1877, respectively.

Ramsey had rented the mill from Davis & Co., in the spring, and had been running it, but afterwards the mill was closed, and Ramsey retained the key and advertised the mill and machinery for sale under his mortgage. On the 4th day of October, 1877, Jones surrendered to Davis & Co. the notes that were secured by said second mortgage, and they quit-claimed to him said land, and in their deed expressly conveyed the woolen factory thereon situated, with all the appurtenances, fixtures, machinery and implements of and belonging thereto, and then being therein. It seems that Davis & Co. had, when the mill was rented to Ramsey, retained a duplicate key to the mill, and this they delivered to Jones. Thereupon Jones, before the proposed day of sale under Ramsey's mortgage, entered the mill and removed therefrom a large portion of the machinery. Ramsey then replevied this machinery, and also filed the bill of complaint in the cause that is now before the court. The bill charged that nearly all of said machinery was affixed to the building, and that it was expressly understood that the said machinery and fixtures were included in and conveyed by the Ramsey mortgage, and that Jones agreed with Davis & Co., at the time that they executed the quit-claim deed, that he would assume the Ramsey debt and pay off his lien. The scope and prayer of the bill was to foreclose the equity of .redemption, and that the premises, including said machinery, should be sold for the payment of the principal and interest in said note and mortgage, and that Jones might be enjoined from defending the replevin suit. Davis & Co. filed a cross-bill, charging that when they executed quit-claim deed Jones agreed to pay off the Ramsey note for $2,400 and interest, but he had not paid it, and that he had fraudulently taken possession of the mill and moved out the machinery with the intention of not paying the Ramsey debt, and that the property left after the removal of the machinery was not sufficient to pay said debt. The cross-bill also charged that it was the understanding that the deed should be placed in the hands of a third party, and was not to take effect until Ramsey's debt was paid, and it also asked that Jones be enjoined from defending the replevin suit. Jones answered both bills, and claimed that the machinery

was not included in the Ramsey mortgage; that he was entitled to it under his quit-claim deed, and that the only consideration for that deed was the debt due him, and denied that he agreed to pay the Ramsey debt.

On the hearing, the court found that it was agreed and understood that the machinery and fixtures were included in and conveyed by the mortgage to Ramsey; that Jones agreed to pay off the Ramsey mortgage; and had notice that said Davis & Co. intended, when they made the Ramsey mortgage, to convey said machinery by said mortgage to Ramsey; that Ramsey was in the possession of the premises on the 4th day of October, 1877; that Jones obtained the keys under false pretenses, and entered the building Oct. 12th, 1877, and carried away a large part of the machinery; that Ramsey replevied the same, and that replevin suit was pending; that the amount due on the Ramsey mortgage was $2.680.00, and that the facts alleged in the original and cross-bills are true. The court decreed under the cross-bill that the defendant, Jones, be restrained from defending the replevin suit of Ramsay v. Jones, and decreed on the original bill that unless the $2,680.00 be paid in thirty days, the master in chancery should act as trustee, and under the power of sale in the mortgage, sell said property without redemption, and make a deed to the purchaser.

The errors assigned are: that the court erred, (1) in finding the entire amount of the principal and interest of the debt of Davis & Co. to Ramsay, due, and in ordering sale of the property in question to pay the same; (2), in ordering that appellant Jones be enjoined from defending the replevin suit of Ramsey; (3), in decreeing a sale of the personal property not described in Ramsey's mortgage; and (4), in directing the master to sell under power in this mortgage, and in decreeing a sale without redemption.

Courts do not assume to make contracts for parties, but content themselves by enforcing such valid contracts as the parties themselves make. In the Ramsey mortgage the principal of the note secured was to be due three years after date, and the interest was payable semi-annually, and the mortgage provided that " in case of default in the payment of the said note above mentioned,

or any parts thereof, according to the tenor and effect thereof," said Ramsey might advertise and sell said premises, and that he should apply the proceeds of sale, first to the payment of expenses, secondly " to the payment of the amount due on said note," rendering the overplus, if any, to the mortgagors or their assigns. This was the contract of the parties themselves. They might readily have provided that in case default was made in the payment of any installment of interest as it fell due, then that the principal debt should become due also; but they did not do this. A trustee cannot apply proceeds of sale on notes not due; nor can a court decree that the mortgaged premises be sold subject to the lien of the unpaid balance. Gardner v. Diedrichs, 41 Ill. 159; Hards v. Burton, 79 Ill. 504.

It is urged that appellant cannot take advantage of this error, for the reason that it does not affect his interests. The rule of law involved in this proposition is correct, but the facts of the case are not such as call for its application. Ramsey held the first mortgage, and Jones held a second mortgage, and thereupon the mortgagors quit-claimed to Jones the equity of redemption, and all the remaining interest of the mortgagors in the premises then became vested in Jones, and he either expressly assumed the payment of the Ramsey mortgage, or, at all events, took the premises subject to its lien. If the land should be sold under the decree, and the title vested in the master's vendee, what would become of the interest of Jones? Under his deed it is his right to pay off the several installments of interest as they fall due, and to pay off the principal debt of $2,400 when it falls due, and thereby perfect his quit claim title. It may be, and probably is, of the utmost importance to him that he should only be required to pay as it is nominated in the bond. If the decree of the court had only been for the two installments of interest due, he might have been able to pay the $240 and costs, and thereby have prevented a sale under the decree. And who knows but that a year hence he may be able to discharge the principal debt and remaining interest, and thereby save his estate and the loss of $1,200?

It is further suggested that the court by its decree does not foreclose the mortgage but appoints its own officer to carry into

effect the trust created by the deed.    The bill in its entire scope is a bill to foreclose the mortgage, and no facts are alleged therein calling upon the court to discharge the trustee that the parties themselves have appointed, and to substitute the appointee of the court in lieu of him.    "The trust created by the deed" is, in the event of sale, "to pay the amount due on the note," but, by the decree, the court ascertains the whole amount of the principal and interest of the notes, whether due or not, and orders that, in case this sum of $2,680 and costs of suit shall not be paid in 30 days, the Master shall, as trustee, sell the property by virtue of the power in the sale mortgage. Suppose that the trustee in the sale mortgage, default having been made in the payment of an installment of interest when due, had assumed to advertise the property for sale.    If Jones, in such case, had paid, or tendered to him the interest then due, and all costs and expenses accrued, could he, under the powers in the mortgage, notwithstanding this, have rightfully and legally proceeded to sell the property in order to make or compel the payment of the principal debt which was not due? And yet, under this decree, Jones can only prevent a sale of the property by paying in full that which is not due as well as that which is due.    Clearly, this is not carrying into effect the trust created by the deed.

We know of no case in which a court of chancery has ever assumed, on bill filed by the plaintiff in an action at law, to enjoin the defendant in the action from making defense to such action, and yet allowed the plaintiff to proceed with the action.    It would seem that the plaintiff at law, having made choice of the forum in which to proceed against the defendant, should, if he discovers that he has commenced in the wrong forum, abandon his action and file his bill.    If the articles of machinery were fixtures, and constituted a part of the realty as between mortgagor and mortgagee, then they passed by the first mortgage to Ramsey.    In that case Ramsey, any time after the execution and delivery of the mortgage, might have maintained ejectment and recovered possession of the land and everything that was a part of the realty.    A mortgagee has the right of immediate possession, and he is not required to show a

breach of the condition or previous notice. Hilliard on Mort-
gages, 4th Edn. Vol. 1, 168. In this State the mortgagee is con-
sidered the owner of the fee as against the mortgagor, and all
claiming under him, and is entitled to all the rights and remedies
which the law gives to such an owner, and either before or after
condition broken he can enter or bring ejectment. Carroll v.
Ballance, 26 Ill. 9; Nelson v. Pinegar, 30 Ill. 480; Kilgour
v. Gockley, 83 Ill. 109; Moore v. Fitman, 44 Ill. 367; Harper
v. Ely, 70 Ill. 581. If a fixture or other part of the real estate
be wrongfully detached from the freehold, the thing detached
becomes the personal property of the owner of the soil, and he
may, unless the land is held adversely, maintain replevin for
the same. While the owner could not bring replevin for chat-
tels severed from land in the adverse possession of the defend-
ant, yet a landlord might thus proceed against his tenant, as
the possession of the tenant is not adverse. Anderson v. Hap-
ler, 34 Ill. 436. The possession of the grantee of the mort-
gagor is not hostile to or inconsistent with the right and title
of the mortgagee, such grantee only succeeds to the right of
the mortgagor and with notice of the incumbrance and his pos-
session is not adverse to the mortgagee. Medley v. Elliott, 62
Ill. 532. If the machinery then constituted a part of the realty
and was covered by the mortgage, Ramsey had an adequate
remedy at law, and could introduce his evidence as to the
character of the machinery and its attachments to the mill and
all surrounding circumstances in the replevin suit.

So far as the alleged agreement of Jones to pay off the Ram-
sey mortgage is concerned, we would say that even assuming
as sound law that Davis & Co., in the event that they were
able to establish the fact that such agreement was actually
made, and for a consideration, and that Jones was fraudulently
attempting to defeat the claim of Ramsey in the replevin suit,
and to remove and dispose of the fixtures, would be entitled to
the injunction; yet no such case is made out by the proofs.

The deed contains no such provision. Davis testified that
his understanding was that Jones would pay off the Ramsey
debt. Pritchett testified that his understanding was that Jones
would pay off the Ramsey mortgage; that he couldn't remember

his words, but that he thinks that this was the meaning, and that when the deed was signed nothing was said about it. Adams testified that he had frequent talks with Jones about the Ramsey debt; that he could not state when or where, but that Jones had said that he would pay off the Ramsey debt. On the other hand, Vymonds, who took the acknowledgment to the deed, testified that nothing was said by any one of the parties about the Ramsey debt, and Jones testified that he had not at any time promised to pay off the Ramsey mortgage. What the witnesses Davis and Pritchett said as to what they thought and understood, is incompetent as evidence, and proves nothing; and the statement of Adams as to conversations that he could not locate either as to time or place, especially when we consider the surrounding circumstances, and that various propositions were mooted between them and rejected, is extremely unsatisfactory. In fact, the decided weight of the evidence is for the defendant on the question of this alleged agreement. The record is barren of any proof that the deed was intended to be an escrow.

We do not desire upon this record to express any opinion as to whether the machinery in question was personal property or a part of the realty. There will, in all probability, be a second trial of that issue, either in this case or in the action of replevin, and the evidence upon such trial may be more specific and satisfactory as to the character and surroundings of the property. We might remark, however, that it would be a violation of the rules of evidence to receive proof of a cotemporaneous verbal arrangement, to change the legal effect of the mortgage itself. Smith v. Price, 39 Ill. 28. The mortgage itself, viewed in the light of the *status* of the property and the surrounding circumstances, must speak for itself as to what it did or did not include. Were this a bill alleging a mistake of fact, as distinguished from a mistake of law, and seeking to reform the mortgage, then the rule might be otherwise.

We have been referred by counsel on either side to almost numberless and conflicting decisions upon the subject of fixtures. They are almost uniformly the decisions of the courts of other States, and upon this subject there appears to be an irreconcilable conflict of opinion.

Judge Dillon in the Central Law Journal, of January 5, 1877, 22, says of the law of fixtures: "Whoever traces the history of the growth and development of the law on the subject, will see that the constant tendency of the judicial mind has been toward emphasizing the importance of intention, either actual, or as presumed from the character, relations and purposes of the property, as an element of controlling and frequently decisive importance."

In Ewell on Fixtures, on pages 21, 22, it is said: "The weight of modern authority and reason * * * * seems to establish the doctrine that the true criterion of an irremovable fixture consists in the united application of several tests:

"1st.   Real or constructive annexation of the articles in question to the realty.

" 2nd.   Annexation or adaptation to the use or purpose of that part of the realty with which it is connected.

" 3d.   The intention of the party making the annexation to make the article a permanent accession to the freehold; this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, and the policy of the law in relation thereto, the structure and mode of annexation, and the purpose or use for which the annexation has been made.

" Of these three tests, the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention."

In our own State, this question of intention has frequently been referred to in the decisions of the Supreme Court, in passing upon the question as to what was or was not a part of the realty.

In Dooley v. Crist, 25 Ill. 551, the court said: " If the intention was to render the improvement permanent when erected, there can be no question that it became a part of the freehold, and no subsequent change of intention changed its character to that of personal property."

In Smith v. Moore, 26 Ill. 392, the court said:   " The true

Jones v. Ramsey.

reason why a purchaser, before the completion of the contract, has no authority to remove improvements which he may have placed upon the land, is not because he is a mortgagor, but because the law presumes they were annexed with the design of being permanent. The exception in favor of trade fixtures is made because the annexations are supposed to be accessory to the calling of the tenant, and not to the land; that they are made, not with the design of being permanent, but of being severed at the end of the term; whilst with the purchaser the presumption is that they are made with the design of their permanent engagement in connection with the land, and as an accessory to it. He makes them in view of their becoming his when he shall have acquired the absolute ownership of the land by conveyance."

In Kelly v. Austin, 46 Ill. 156, the Court said: "While the intention alone will not always determine whether such structures are, or are not to be regarded as personal estate, it will have a controlling influence in cases of doubt."

In Arnold v. Crowder, 81 Ill. 56, the Court said: "The matter of annexation is a relative question, which must receive a different answer as the parties differ in each case that arises. Much depends upon the intention with which the structure is made. * * * * Perhaps the true rule is, that articles not otherwise attached to the land than by their own weight, are not to be considered as part of the land, unless the circumstances are such as to show that they were intended to be part of the land, the *onus* of showing they were so intended lying on those who assert that they have ceased to be chattels; and that, on the contrary, an article which is affixed to the land, even slightly, is to be considered as part of the land, unless the circumstances are such as to show that the article was intended all along to continue a chattel, the *onus* similarly lying on those who contend that it is a chattel. Intention is manifested by acts."

We have been thus elaborate upon this subject of intention, as we think that it may be of controlling influence as to some, if not all, of the property in question.

The right to redeem within twelve months after the day of

sale, is a substantial or statutory right, and a right in which the grantee of the mortgagor has a lively interest. The statutes of Illinois in force when the mortgage deed was made, entered into the legal and equitable obligations of the contract witnessed by the deed, and if the mortgage is foreclosed by proceedings in court the foreclosure must be in conformity with such statute. When, in this case, the mortgagee asked the aid of the court of chancery, and prayed the court to take an account of the amount due upon the mortgage debt, and that the equity of redemption in said premises might be foreclosed, and that a decree might be made for the sale of the mortgaged premises, he was bound to know that the court could and would grant him relief only in conformity with the statute, and in accordance with principles that govern the courts of chancery. It matters not that no personal decree against any one for the amount ascertained to be due was entered, and it matters not that the master was directed to sell by virtue of the power in the sale mortgage. Notwithstanding this the decree was in substance and in fact a decree to foreclose the mortgage. The court found the amount due on the mortgage to be $2,680, and ordered and decreed that if said amount should not be paid in 30 days, that the Master in Chancery of Clay county should sell said property, and that he should sell it according to law, and make a deed to the purchaser, and that there should be no redemption, and that the Master should pay to Jones any balance that the property might produce at said sale over and above said sum of $2,680 and costs. It is true there was no express order that the equity of redemption would be foreclosed, but the orders that in default of payment by a certain day the Master should sell and execute a deed to the purchaser, and that there should be no redemption from the sale, not only effectually foreclosed the equity of redemption, but cut off the statutory right of redemption after sale. It is idle to say that such sale would be under the power in the mortgage, as the master would derive all his power from the decree, of the court. Where there is a mortgage and a court decree a sale under it, to culminate, mediately or immediately, in absolute legal and equitable title, then, regardless of the

Jones v. Ramsey.

form of the mortgage, it is a foreclosure of the equity of redemption. The decree, the sale made under it and the deed, would constitute the transfer of title. The purchaser at such sale would derive title through the judicial proceedings in this cause. The decree of the court would be an essential element in the transfer of the title, and, under the statute, the court, when a mortgage is the lever with which it works the transfer, and the case is one not calling for a strict foreclosure, can only decree such transfer to be made as the statute directs it shall be made. The statutory right of redemption after sale is a rule of property. R. S. 1874, Chap. 77, §§ 16, 18; Weiner v. Heintz, 17 Ill. 259, 262; Rhinehart v. Stevenson, 23 Ill. 524; D'Wolf v. Hayden, 24 Ill. 525; Farrell v. Parlier, 50 Ill. 274; Karnes v. Lloyd, 52 Ill. 113; Bronson v. Kinzie, 1 Howard, 311; Brine v. Hartford Fire Ins. Co. S. C. U. S., opinion filed May 13, 1878.

For the reasons indicated in this opinion the decree herein is reversed and the cause remanded.

Reversed and remanded.