. WILLIAM B. HEWITT *et al.*

*v.*

THE GENERAL ELECTRIC COMPANY.

*Filed at Springfield June 11, 1896—Rehearing denied January 14, 1897.*

1. FIXTURES—*when article retains its personal character though attached to real estate.* Machinery placed in a mine by the lessee does not become a part of the realty so as to pass to the lessor when it may be severed without material injury to itself or the realty, and the intention that it should retain its personal character is evident.

2. SAME—*effect of levying attachment upon property as personalty.* The levying of an attachment by a lessor of a mine upon property of the lessee is strong evidence that he does not regard such property as part of the realty.

3. ACKNOWLEDGMENT—*sufficiency of acknowledgment of chattel mortgage—mortgagor's residence.* Acknowledgment of a chattel mortgage at the home office of a corporation mortgagor is a sufficient compliance with the statute requiring chattel mortgages to be acknowledged where the mortgagor resides.

4. MORTGAGES—*validity of mortgage on mining machinery as against lessor of mine.* A mortgage executed by a lessee of a mine upon machinery purchased from the mortgagee, which provides that the machinery shall not become a part of the realty by being annexed thereto, is not invalid as against the lessor.

5. SAME—*effect where mortgagor retains property after maturity of debt—attachment.* Mortgaged property found in the mortgagor's possession and levied upon under a writ of attachment after the maturity of the mortgage debt, cannot be subsequently taken and held under the mortgage, as against the attachment, unless the attachment lien is discharged by payment of the judgment.

*Hewitt v. General Electric Co.* 61 Ill. App. 168, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

WILLIAMS & CAPEN, for appellants:

Where a chattel mortgage is executed upon machinery after it has been so affixed to the realty as to become a part of it, and where the lease does not authorize a removal of the thing attached, and where such removal can

not be made without injury to the realty or to the fixture itself, the agreement of the parties will not have the effect of preserving the character of personalty in the thing attached.     *Cross* v. *Weare Commission Co.* 153 Ill. 512.

The residence of a corporation is where its business is done. *Bristol* v. *Railroad Co.* 15 Ill. 436; *Bank* v. *Railroad Co.* 82 id. 493; *Pennsylvania Co.* v. *Sloan,* 1 Ill. App. 364; *Silsbee* v. *Hotel Co.* 30 id. 204; *Coal Co.* v. *Hughes,* 45 id. 566; *Bridge Co.* v. *Adams County,* 88 Ill. 615.

Chattel mortgages are strictly construed.   When the requirements of the statute are not met as to acknowledgment and recording, they are void as to third parties. *Forest* v. *Tinkham,* 29 Ill. 141; *Porter* v. *Dement,* 35 id. 478; *Frank* v. *Miner,* 50 id. 444; *Hammers* v. *Dole,* 61 id. 307; *Long* v. *Cockern,* 128 id. 29; *Sage* v. *Browning,* 51 id. 217.

A. E. DeMANGE, for appellee:

Whether an article is a fixture or not is a mixed question of law and fact.   *Allen* v. *Mooney,* 130 Mass. 155; *Grand Lodge* v. *Know,* 27 Mo. 315; *Campbell* v. *O'Neil,* 64 Pa. St. 290.

To determine whether or not property is chattel or has become part of the realty, the court will first look to the intention of the parties.   *Jones* v. *Ramsay,* 3 Ill. App. 303; *Kelly* v. *Austin,* 46 Ill. 156 ; *Ballou* v. *Jones,* 37 id. 95; *Eaves* v. *Estes,* 10 Kan. 314; *Sword* v. *Low,* 122 Ill. 487; *Andrews* v. *Chandler,* 27 Ill. App. 103.

The commencement of a replevin suit to recover possession of certain chattels is a strong admission that the property is chattel in its nature.   *Long* v. *Cockern,* 128 Ill. 29; *Ballou* v. *Jones,* 37 id. 95.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of replevin, brought by the General Electric Company on the 15th day of August, 1894, against William B. Hewitt and the Davies Coal Company, to recover the following property:   One long wall undercutter, for mining coal; twenty-four 16 C. P. incandes-

cent lamps; two thousand feet of weather-proof wire; six hundred feet of lead-covered cable; one switch-board; one lot of station instruments; one dynamo of 20,000 Watt capacity. To the declaration Hewitt pleaded, first, *non detinet;* second, *non cepit;* third, property in the defendant; fourth and fifth, property of the Davies Coal Company; sixth, *nul tiel* corporation; seventh, that the property was in the possession of constable Thurber under a writ of attachment. The Davies Coal Company pleaded, first, *non detinet;* second, *non cepit;* third, property in defendant; fourth, property in possession of constable Thurber under a writ of attachment; fifth, property in William B. Hewitt; sixth, property in the Davies Coal Company; seventh, *nul tiel* corporation. Issue having been taken on the pleas, a trial was had before a jury, resulting in a verdict for the plaintiff for the property claimed in the action. The court overruled a motion for new trial and entered judgment on the verdict. The defendants, Hewitt and the Davies Coal Company, appealed to the Appellate Court, where the judgment was reversed and the cause remanded, the court entering a judgment as follows: "The judgment must be reversed as to both appellants and the cause remanded, with directions to enter judgment for return of the property to the Davies Coal Company, unless, within a short day to be fixed by the court, the appellee pay to the Davies Coal Company the amount of its judgment and interest thereon and cost in said attachment proceeding, in which case the appellee may retain the property, and that in either case the appellee pay the cost." To reverse this judgment Hewitt and the Davies Coal Company took this appeal, and the plaintiff, the electric company, has assigned cross-errors.

It appears from the record that in the spring of 1893 the Davies Coal Company, of which William B. Hewitt was president and general manager, owned a coal mine at Chenoa, Illinois. On the second day of April of that year it leased the mine to one C. O. Godfrey, of St. Louis,

for nine months.  The lease contained a provision that the lessee, at the end of the term, might purchase the property on certain terms therein specified.  Godfrey went into the possession of the mine under the lease and assigned the same to the Benton Coal Company, a corporation organized under the laws of Missouri, of which he was president and a stockholder.  The Benton Coal Company purchased on credit of the General Electric Company one long wall undercutter, for mining or undercutting coal; twenty-four 16 C. P. incandescent lamps; two thousand feet of weather-proof wire; six hundred feet of lead-covered cable;  one switch-board; one lot of station instruments and one dynamo of 20,000 Watt capacity,—the property involved in this action.  To secure the deferred payments of the purchase money, amounting to $3000, the Benton Coal Company executed and delivered to the General Electric Company a chattel mortgage on the property above mentioned.  The chattel mortgage contained this clause:  "It being expressly · understood that none of the apparatus, appliances or supplies above mentioned are to become part of the realty by reason of being attached thereto, all of which property is situated and being used by the party of the first part in the coal mine in Chenoa, Ill."  This mortgage was acknowledged before a notary public in the city of St. Louis, Mo., under his official seal, by C. O. Godfrey, president, and H. R. Godfrey, secretary, of the Benton Coal Company.  The property purchased was placed in the mine.  The Benton Coal Company became insolvent, and ceased to operate the mine in December, 1893, or January, 1894, leaving $3000 unpaid on the chattel mortgage. In the early part of January, 1894, Hewitt and the Davies Coal Company took forcible possession of the mine and the mortgaged property which had been placed therein by the Benton Coal Company.

It is insisted by the appellants that the property in the chattel mortgage having been attached to the real

estate, the mine, it passed to the owner of the fee, the Davies Coal Company, upon the termination of the lease, and that the chattel mortgage is void as against the company. In *Sword* v. *Low*, 122 Ill. 487, it was held that where an article personal in its nature is so attached to the realty that it can be removed without material injury to it or to the realty, the intention with which it is attached will govern; and if there is an express agreement that it shall remain personal property, or if, from the attendant circumstances, it is evident or may be presumed that such was the intention of the parties, such article will be held to have retained its personal character. The Benton Coal Company, when it placed the property in the mine, occupied as a lessee, and it is unreasonable to suppose that it would add a large amount of property to the mine to be turned over to the lessor when the lease expired. Moreover, the mortgage contained a provision that no part of the property should become a part of the realty by reason of being attached. This shows a clear and manifest intention on behalf of both mortgagor and mortgagee that the property should remain personal property. In addition to these facts, Hewitt sued out an attachment before a justice of the peace against the Benton Coal Company, and levied on the mortgaged property as personal property. Hewitt's act may be regarded as strong evidence against the lessor that the property was not real estate.

Long v. *Cockern*, 128 Ill. 29, seems to be in point on this question. It was there held that the institution of a replevin suit by the vendor, if it did not estop him to claim the property as a part of the realty, afforded very strong evidence against him that the property was not real estate. So here, the levy upon the property by the lessor as personal property may be regarded as strong evidence it regarded the property personal and not real estate.

There is other evidence tending to show an intention that the property should not become a part of the real estate when it was placed, and we find no evidence

manifesting the intention of the lessor or lessee or mortgagee that the property should be regarded as a part of the realty.   We think, therefore, that the holding of the Appellate Court that the property involved was personal property was correct.

It is next claimed that the chattel mortgage was invalid because acknowledged in St. Louis, while the mortgagor resided in Chenoa, this State.   The mortgage was acknowledged in St. Louis before a notary public, and the evidence is that St. Louis was the home office of the mortgagor.   The acknowledgment, therefore, conformed to section 2 of the Chattel Mortgage act.   We find nothing in the record to show that the chattel mortgage was invalid, and if the mortgagee, the electric company, had proceeded at once, upon the maturity of the mortgage debt, to take possession of the mortgaged property, we see no reason why it would not be entitled to hold the property and dispose of it in satisfaction of the mortgage indebtedness.   This was not, however, done, but on the 8th day of June, 1894, the appellant Hewitt, as president of the Davies Coal Company, instituted suit by attachment against the Benton Coal Company to recover the sum of $102.92 due the Davies Coal Company.   A writ was issued and placed in the hands of a constable and levied on a part of the property described in the mortgage, to-wit, one dynamo, two thousand feet of copper-wire rope, and one coal digger.   On the 13th day of June judgment was rendered before the justice and an order entered for a sale of the property attached, for the payment of the judgment and costs.   This property, found in the possession of the Benton Coal Company, having been taken under an attachment some time after the mortgage was due, could not subsequently be taken and held under the mortgage, as against the attachment, unless the lien of the attachment was discharged by the payment of the judgment rendered in the attachment proceedings, and if the electric company had no other

-title to the property except what it derived through the mortgage, it could not recover that portion of the property attached by the appellants. But as to the dynamo, the electric company claimed through another source. Nels Hanson commenced an action of attachment against the Benton Coal Company for wages due him, and obtained a judgment on the 13th day of March, 1894. An execution was issued on the judgment and levied on the dynamo, and on the 17th day of June the property was sold to one DeMange, who transferred his title to the General Electric Company. In this mode the electric company obtained title to the dynamo, and it had the right to recover the property on the action of replevin.

Our conclusion then is, that the plaintiff, the General Electric Company, was entitled to recover the dynamo under the title obtained by DeMange and transferred to it, and under the mortgage it was entitled to recover six hundred feet of lead-covered cable, one switch-board and one lot of station instruments, and that the appellants were entitled to judgment, under their attachment against the Benton Coal Company, for two articles of property replevied, to-wit, one long wall undercutter, for mining coal, and two thousand feet of weather-proof wire.

The judgments of the Appellate and circuit courts will be reversed and the cause remanded to the circuit court, with directions to enter judgment for the return to the appellants, the Davies Coal Company and William B. Hewitt, of one long wall undercutter, for mining coal, and two thousand feet of weather-proof wire, unless, within a short day to be fixed by the court, the appellee pay to the Davies Coal Company the amount of its judgment and interest thereon and cost in said attachment proceeding, in which case the appellee may retain the property, and appellants to pay all costs in the circuit court, the costs in the Appellate Court and this court to be equally divided between appellants and appellee.

*Reversed and remanded.*