## M. C. Ward v. J. C. Earl.

1.  FIXTURES—*Made by Contract.*—While parties can not, by contract, make personal property real or personal at will, yet where an article, personal in its nature, is so attached to the realty that it can be removed without material injury to it or the realty, the intention with which it is attached will govern.

2.  SAME—*What is—Rule for Determining.*—Whether a structure is a fixture depends upon the nature and character of the act by which such structure is put in its place, the policy of the law connected with its purpose, and the intent of those concerned in the act.

3.  SAME—*Intention of the Parties.*—The intention of the party making the annexation is the chief element to be considered in determining what are fixtures.

4.  SAME—*Right of the Tenant to Carry Away.*—A tenant, whether for life, for years or at will, is permitted to carry away all such fixtures of a chattel nature as he has erected upon the demised premises for the purpose of ornament, domestic convenience or to carry on trade; provided such removal can be effected without material injury to the freehold.

5.  SAME—*Right of an Assignee.*—An assignee of the lease and purchaser of the fixtures from the tenant, acquires the right of the tenant to remove them, if such removal can be effected without material injury to the realty.

Appeal from the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding.  Heard in this court at the October term, 1899.  Reversed.  Opinion filed January 18, 1900.  Rehearing denied.

Statement by the Court.—This is an appeal from a judgment in favor of appellee and against appellant for the sum of $175, rendered on appeal from the judgment of a justice of the peace.

The main facts are as follows: February 1, 1890, appellee, by written indenture of that date, demised to Roberts & Company the brick store and basement known as number 410 Sixty-third street, in the city of Chicago, from February 1, 1890, until April 30, 1895. The lessees, after taking possession of the premises, put in certain structures for the purpose of their business, and occupied the premises until some time in 1892, when they assigned their lease and sold all their interest in the premises to one Martin Henry. Henry occupied the premises until November 12, 1894, when he assigned the lease and sold the stock and fixtures to appellant Ward and one Harness, his partner, who went into possession, and subsequently, in February, 1895, before the expiration of the lease, removed from the premises, taking with them what they claimed to be fixtures, which will be more particularly described hereafter. Appellee recognized the assignments to Martin Henry and appellant Ward and collected rent from each of them as his tenant.

The store or room demised was in dimensions twenty by fifty feet. Roberts & Company, while they occupied the premises, put in what the witnesses improperly call wainscoting, but which appears from appellee's testimony to have been plain sheeting. The sheeting extended from twenty-three to twenty-five feet back from the front of the room and from the floor to the ceiling, both sheeting and ceiling being Georgia pine finished in oil. The sheeting was put on by first nailing three strips to each wall and then nailing the sheeting to the strips, leaving a space between the sheeting and the wall. At the floor and ceiling the sheeting was secured by quarter round strips. An office of Georgia pine finished in oil, which is not otherwise described in the evidence, was attached, as appellee testified, to the wainscoting and to the ceiling by a quarter round. A cold storage room was also put in the room by Roberts & Co., twelve feet in width

by fourteen feet in depth, and from ten to twelve feet in height, having three glass doors in front and a door on the side. It had double walls, with a space six or eight inches between the walls, as is usual in an ice box or cold storage room. It was constructed in the room from lumber brought there; strips two by four inches were nailed to the wall and floor, and it was built against them and on posts nailed to the floor. It was, as described by appellee, a large ice box, constructed and attached as above stated. Between the cold storage room and the wall opposite it, there was a partition of Georgia pine finished in oil, which extended from floor to ceiling, with a door in it. All the structures above described were placed in the room by Roberts & Co., the original lessees, without any expense of appellee. Appellee testified that when appellant and his partner vacated the premises, they removed the partition, the sheeting, cold storage room and office; that where the sheeting was pried off, and where the cold storage room was attached to the wall, considerable plastering was torn off.

Q. "How much?" A. "Well, there was a space seven feet long and two or three inches wide, and in several places all along the walls."

He also testified that in removing the two by fours, where they were nailed to the floor, the floor was splintered. On cross-examination appellee testified the damage to the plastering could have been repaired with two or three buckets of plaster and the labor of one man for two or three hours. Breckenridge, a witness for appellee, and who helped to take out the structures in question, testified that the plastering was torn out in places two or three inches wide, some of such places being eighteen or twenty inches long. Wheeler, appellee's attorney, also testified as to the damage to the plastering, his testimony not differing materially from that of the last witness. In taking the cold storage room out it was sawed in four pieces, the sections running at right angles, and was removed to another place by appellant and his partner and there used.

Appellee testified that the value of the cold storage room,

or box, as it stood in the building, was $150, and that the value of the wainscoting and office, to remove, would be merely its value as kindling wood; also that he did not restore any of the removed structures, because he rented the building for another purpose, and did not require them.

Louden, an architect, called by appellee, testified that he had heard the testimony describing the sheeting and cold storage room, and was familiar with the cost of such; that the value of the sheeting and office was about $60, and the value of the cold storage room about $175 to $200.

SAMUEL CLARK, attorney for appellant.

WHEELER & SILBER, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

It is contended by appellant's counsel that the structures removed by appellant were trade fixtures which he had purchased from Henry, the former tenant, who had purchased them from Roberts & Co., who put them in the premises, and that, appellant having removed them while in possession as tenant of appellee, and before the expiration of the lease, there can be no recovery. Whether they were trade fixtures is the question mainly contested. That they were placed in the premises for the convenience of Roberts & Co., in carrying on the business of a meat market, in other words, for the purpose of their trade, is substantially admitted by appellee.

In appellee's examination, as a witness, the following occurred:

Q. "It was wainscoted the whole height of the room?" A. "Yes, sir; you see it was for a meat market, and they hung their meat on that side of the wall, and the meat had damaged the wall, soiled the wall, and that wainscoting was put up to protect it."

Roberts & Co. were engaged in the meat market business. On cross-examination, appellee testified that he knew when the structures described were being put in by Roberts

& Co., and how they were put in, and made no objection, and also knew that they were used by them in their business. That the damage to the floor and plastering occasioned by taking out the structures was not material, is apparent from the evidence. It was so trifling that appellee did not think it of sufficient importance to produce evidence of what it would cost to repair it, or any figures or data by means of which the jury could estimate the pecuniary damage.

In Secord v. Lane, 122 Ill. 487, 496, the court say :

" To determine the immovable character of a fixture, three tests are, by the modern authorities, applied, viz. : First, actual annexation to the realty, or something appurtenant thereto; second, application to the use or purpose to which the part of the realty with which it is connected is appropriated; and third, the intention of the parties making the annexation to make a permanent accession to the freehold."

The court, in the case cited, also say :

" It is not held that parties may, by contract, make personal property real or personal at will, but that where an article personal in its nature is so attached to the realty that it can be removed without material injury to it or the realty, the intention with which it is attached will govern." See also Hewitt v. Gen. Electric Co., 164 Ill. 420, 424, and Hacker v. Munroe & Son, 176 Id. 384, 396, to the same effect.

Washburn, discussing fixtures, says :

" The word is used here in its technical sense as ' something substantially and permanently annexed to the soil,' though in its nature removable. But the old notion of physical attachment, as the principal test in determining whether a given thing is a fixture or not, may now be regarded as exploded. Whether it is a fixture depends upon the nature and character of the act by which the structure is put in its place, the policy of the law connected with its purpose, and the intent of those concerned in the act. And while courts still refer to the character of the annexation as one element in determining whether an article is a fixture, greater stress is laid upon the nature and adaptation of the article annexed, the uses and purposes to which that part of the building is appropriated at the time the annexation is

made, and the relation of the party making it to the prop-
erty in question, as settling that a permanent annexation is
intended." Washburn on Real Property, 5th Ed., Ch. 1,
Sec. 18.

In 8 Am. & Eng. Ency. of Law, p. 44, we find the fol-
lowing in a note: " Many cases hold that the intention of
the party making the annexation is the chief element to
be considered, in determining what are fixtures," citing
numerous cases, the following of which we have examined
and find they support the note: Allen v. Mooney, 130
Mass. 155, 157; Taylor v. Collins et al., 51 Wis. 123, 129;
Hill v. Sewald, 53 Penn. St. 271; Seeger v. Pettit, 77 Ib.
437; Ottumwa Woolen Mill Co. v. Hawley, 44 Ia. 57; Jones
v. Ramsey et al., 3 Ill. App. 303.

In Taylor v. Collins et al., *supra*, the court say:

" This matter of intention is coming to be the main test
in such cases, and the matter of physical annexation of com-
paratively little importance."

The cold storage room, which is nothing more than a
large ice box, was admittedly placed in the building for use
in the business of Roberts & Co., which business was car-
rying on a meat market. The premises were demised to
them for that purpose, and we think it apparent from the
evidence that their intention was not to make it a perma-
nent accession to the freehold. Nor do we think that appel-
lee could have understood that it was so intended. For the
general purpose of renting the premises, the cold storage
room would have been undesirable, except on the hypothesis
that appellee would not lease it for any other use than as a
meat market, which is hardly presumable in view of the
fact that, after appellant vacated the premises, he demised
them for use as a storage room for bicycles, and says he did
not require the removed structures. There was not, as
already stated, any material damage caused to the premises
by the removal of the cold storage structure.

" In modern times the rule is understood to be that upon
principles of general policy, a tenant, whether for life, for
years, or at will, is permitted to carry away all such
fixtures of a chattel nature as he himself has erected upon

Ward v. Earl.

the demised premises for the purpose of ornament, domestic convenience or to carry on trade; provided the removal can be effected without material injury to the freehold." Taylor on Landlord and Tenant, 8th Ed., Vol. 2, Sec. 544.

Among numerous articles of which this author says it has been adjudicated that they could be removed, are ice houses, counters or counting rooms nailed to the floor, etc. Ib., Sec. 545. See also Joslyn v. McCabe, 46 Wis. 591.

In C. & A. R. R. Co. v. Goodwin et al., 111 Ill. 273, the court say:

"It does not necessarily and invariably follow that structures, or even buildings, placed by one person on the land of another, become a part of the real estate. When they are trade fixtures they are regarded as personal property."

Appellee's counsel object that it was necessary to cut the cold storage room in order to remove it. It appears both by the testimony of appellant and that of Breckinridge, who helped remove the cold storage room, that after its removal it was set up in another building occupied by appellant; and appellee himself testified that appellant and his partner used it after its removal. The fact that it was so bulky that it was necessary to divide it into quarters in order to remove it, could not affect appellant's right of removal. Park v. Baker, 7 Allen (Mass.), 78; Wood's Landlord and Tenant, 2d Ed., Vol. 2, p. 1227.

Appellee's counsel contends that as neither Roberts & Co. nor Henry asserted right to the fixtures when they vacated, respectively, appellant can not now claim them, citing as authority Leman v. Best, 30 Ill. App. 324. That case is not in point. The court say: "The tenancy of the houses had changed several times by expiration of terms and new demises since the fixtures were first put in," etc.

Here there was only a single demise, which had not expired when the fixtures were taken out. Henry, an assignee of the lease and purchaser of the fixtures from Roberts & Co., had title to the fixtures (Gubbins v. Ayres, 72 Tenn. 329), and appellant acquired title by purchase from Henry.

We are of opinion that it can not reasonably be held otherwise than that the cold storage room was a trade fixture, and as such removable by the tenant before the · expiration of the lease. We are also of opinion that the office, partition and sheeting were trade fixtures, and as such removable by the tenant.

But even though it should be conceded that the sheeting, or wainscoting, as the witnesses call it, was not removable, the judgment can not be sustained. The only structure valued separately by the witnesses is the cold storage room, which appellee testified was worth $150, and Louden $175 to $200. The verdict of the jury was evidently based on these valuations. Appellee did not testify as to any value of the sheeting as it was in the building, and Louden, the only other witness as to values, valued the office and sheeting together at the sum of $60, not stating their values separately, so that no intelligent verdict could be rendered in respect to the sheeting.

Appellee having had the opportunity to prove the pecuniary loss or damage to the floor and wall caused by the removal of the structures, omitted to make such proofs, so that no intelligent verdict could be rendered for such damage. The judgment will be reversed.