## Theodocia Ebersol et al. v. Samuel Trainor.

1. FIXTURES—*Erected by a Trespasser.*—Where a person erects a wire fence upon the land of another without the owner's consent, such fence becomes a part of the realty and such person parts with his ownership of the materials entering into the fence and has no further right thereto.

2. PLEADING—*What the Plea of Not Guilty Puts in Issue.*—In an action of trespass *quare clausum fregit*, the plaintiff's possession is put in issue by the plea of not guilty.

3. POSSESSION—*Not to be Acquired from a Tenant.*—If a tenant abandons the premises the landlord may re-enter, but such tenant has no power to surrender the landlord's right of possession to a pretended paramount title. No one can acquire the landlord's rights under such a surrender by the tenant.

4. SAME—*In Actions Quare Clausum Fregit.*—In an action of trespass *quare clausum fregit* the burden is on the plaintiff to show that he was in possession of the premises in question at the time of the alleged trespass.

5. TRESPASS—*Requisites of the Possession.*—This court is not prepared to hold that a mere trespasser can recover damages against the landlord who removes an obstruction he has wrongfully placed upon the real estate of the landlord, simply because it was the tenant who should have removed the obstruction. If the landlord chooses to protect the tenant in his possession, a mere trespasser can not complain.

Trespass, *quare clausum fregit.*—Trial in the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendants. Heard in this court at the December term, 1898. Reversed, with a statement of facts. Opinion filed April 11, 1899.

C. C. & L. F. STRAWN and ANTOINETTE FUNK, attorneys for appellants.

A tenant may surrender the possession he has as such tenant, but he can not surrender a possession he has not, inconsistent with his landlord's right of possession. He can not surrender to another claiming the fee, his landlord's right of possession at the expiration of his term. A stranger, though claiming the fée, but not having the possession, can not obtain it against another in possession by his tenant also claiming the fee. Jenness v. Mount Hope Iron Co., 53 Me. 20, 23; H. & N. H. R. Co. v. Jackson, 24 Conn. 514.

Where a contract (consent in this case) is made in ignorance of a material fact in relation to it, such contract is voidable at the election of the person so in error. Roberts v. Fisher, 43 N. Y. 159.

A. C. Norton, attorney for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

Appellee brought this action of trespass against appellants, charging them with breaking and entering a certain close of plaintiff in Livingston county (which close was not further described in the declaration) and cutting down and destroying a barb wire fence, the property of plaintiff, on said premises. Defendants pleaded the general issue. There was a jury trial, and a verdict and a judgment for plaintiff for $100, from which defendants appeal.

Section 6, in township 25 north, and of range 8 east of the third principal meridian, in Livingston county, appears to greatly differ from an ordinary government section, and is of an irregular shape, being unusually long from north to south and unusually narrow from east to west. The northwest quarter of said section is nearly a mile long, and was many years ago subdivided into lots. The southernmost lot was numbered 1, and contained about eighty acres. The next lot north was numbered 2, and also contained about eighty acres. There were two lots north of these in said irregular quarter section, numbered 3 and 4. A plat of the subdivision was of record in the county. Said lots 1 and 2, and other lands in Livingston and La Salle counties, belonged to the estate of David Strawn, deceased, and a partition thereof between the parties entitled under said deceased was made in a proceeding in equity in La Salle county. The commissioners appointed in said cause made a new survey and subdivision of said northwest quarter of section 6. They created a lot at the south end of said quarter, containing only 63.68 acres, which they numbered 1, and a lot next north of it, containing 63.48 acres, which they num-

bered 2, and north of that lots 3, 4 and 5, thus making one more lot in the quarter than there was in the old subdi-vision thereof. They allotted said new lot 1, containing 63.68 acres, to Walter D. Strawn, and said new lot 2, con-taining 63.48 acres, to Theodocia Ebersol. Walter and Theodocia were son and daughter, respectively, of said David Strawn. This partition was confirmed by the court. In making the partition the commissioners caused a plat of their new subdivision of said northwest quarter to be made by A. C. Huetson, county surveyor of Livingston county. The report of the commissioners was embodied in the decree entered confirming said partition, and it shows the number of acres as above stated in each of said new lots 1 and 2; but if said plat was attached to said report it was not embodied in said decree. A certified copy of the decree of partition and of the decree of confirmation, embodying said report, was filed for record in the recorder's office of Liv-ingston county, December 20, 1888. Walter D. Strawn took possession of the new lot 1 and Mrs. Ebersol of the new lot 2. The new lot 1 contained sixteen or eighteen acres less than the old lot 1, and the new lot 2 contained sixteen or eighteen acres on its south end which were in the old lot 1.

In November, 1891, Walter D. Strawn sold his lot 1 to Samuel Trainor, and conveyed it to him by a warranty deed which entitled Trainor to possession on March 1, 1892, and he took possession shortly before that time. Mrs. Ebersol lived in Chicago, and her lot 2 and several other tracts owned by her in that vicinity were rented for a term of years to Edward Brady. Brady lived on another tract about two and a half miles from the land in controversy. In the latter part of 1896, probably in October, or the first part of November, Trainor went twenty-one rods north of the line of his lot, twenty-one rods in upon the land of Mrs. Ebersol then in the possession of Brady, and used as a pas-ture, and there built the fence in controversy, and thus un-dertook to seize the sixteen or eighteen acres of the old lot 1, which had been by the partition placed in the new lot 2, and allotted to Mrs. Ebersol. There is no proof he did any

further act toward taking or holding possession after building the fence. As Brady lived remote from that land, and it was in the autumn, he did not discover the fence till some three weeks after it was built. He then notified J. W. Ebersol, husband and agent of Theodocia Ebersol. J. W. Ebersol came to the place, and with an employe entered the farm, and by direction of Mrs. Ebersol cut down the new fence and threw it over on Trainor's land. Trainor then brought this suit. If throwing pieces of posts and wire upon Trainor's land was a trespass, it is not the act complained of in the declaration, which is confined to cutting down and destroying the fence. Trainor claimed he had obtained peaceable possession of said sixteen or eighteen acres from the tenant, and that it was a trespass to enter and cut down the fence he there erected.

First. We are of opinion Brady did not let Trainor into possession of this land. If Brady's evidence is true, he certainly did not. Taking Trainor's evidence as true, in our judgment it fails to show that fact. Trainor served on Brady a demand for possession of the north eighteen acres of lot 1. Brady examined his lease and told Trainor he had no lease of any part of lot 1. Trainor showed Brady some stakes which seem to have been on the boundary line between lots 1 and 2 of the old subdivision. Brady did not know where the true lines were, but told Trainor he had no lease of lot 1, and Trainor could do as he had a mind to with lot 1, and Trainor said he was going to fence it, to which Brady made no reply. All that Brady's conversation with Trainor amounts to, when all Trainor's statements of it on direct and cross-examination are considered, is that Brady claimed no part of lot 1, and whatever was in lot 1 Trainor could do with as he had a mind to. Brady was not present when Trainor built the new fence. In fact, the land so seized by Trainor (if building the fence was a seizure of the land south of it) did not belong to Trainor, and was no part of the lot 1 he had bought years before of Walter D. Strawn. Trainor had no better right or title to this piece than he had to sixteen or eighteen acres off his neighbor on

the south. This piece was in lot 2, owned by Mrs. Ebersol and by her leased to Brady. Brady used no words indicating any purpose to give up any land he had leased from Mrs. Ebersol. He disclaimed any right to any land in lot 1. He conceded Trainor's right to take possession to the true line between Trainor and Mrs. Ebersol wherever that might be, and nothing more. He did not know and did not claim to know where that line was. His remarks to Trainor gave the latter no authority to overstep the true boundary between the new lots 1 and 2. But further, can it be said the proofs show Trainor in possession after he built the fence? He did not build fences at the east and west ends of this sixteen or eighteen acres. If there were no fences there then his fence twenty-one rods north of his own line inclosed nothing, and he had no possession. If there were fences on the east and west ends of said piece, and he joined his new fence to them, those end fences did not belong to him, but to Mrs. Ebersol, or to her neighbors on the east and west, by a division between them. Trainor entered as a trespasser and ought not to be given a constructive possession by virtue of those end fences. The proof does not show any acts by him upon said sixteen or eighteen acres after he built the north fence. The fences on the east and west thereof are just as available to show possession in Brady, tenant of Mrs. Ebersol, as the north fence is to show possession in Trainor. Mrs. Ebersol also owned half the fence on the south side of this sixteen or eighteen acres. Trainor had to prove he was in possession when defendants cut down the fence. He has not done so.

Second. The question whether Brady could sub-let is not involved, for Trainor was not seeking to enter as a subtenant of Mrs. Ebersol. He was asserting a title and right to take possession adverse to Mrs. Ebersol. Under such circumstances, if Brady did let Trainor in, he thereby abandoned his possession as Mrs. Ebersol's tenant. If the tenant abandon the premises the landlord may re-enter. (Wood's Landlord and Tenant, Sec. 540.) The tenant has no power to surrender the landlord's right to a pretended paramount

title. No one can acquire a landlord's rights under any such surrender by the tenant.

Third. It is said no one but Brady could enter; that the landlord's entry was wrongful because she was not entitled to possession. In her lease to Brady she reserved " the privilege of entering upon said premises for the purpose of making repairs or improvements at any time when injury to crops would not result." This entry was in December, when crops would not be injured. The removal of this barb wire fence from the middle of the pasture was a proper repair and improvement, and the landlord was strictly within the terms of the lease in the action taken. Besides, the tenant was a witness, and did not complain of the entry by the landlord. Whether the landlord entered rightfully upon the tenant's possession, is a question between the landlord and the tenant, with which others are not concerned. As soon as the tenant learned of Trainor's building this fence upon Mrs. Ebersol's land he notified Ebersol thereof, no doubt in order that the landlord might take steps to help the tenant regain his rights. A license by the tenant to the landlord to enter and remove this fence might well be presumed under the circumstances. We are not prepared to hold that a mere trespasser can recover damages against the landlord who removes an obstruction he has wrongfully placed upon the real estate of the landlord, simply because it was the tenant who should have removed the obstruction. If the landlord chooses to protect the tenant in his possession, we do not think a mere trespasser can complain.

Fourth. It is insisted Trainor built this fence in good faith. This is open to serious question. In the case in chief Trainor testified that he asked the lawyer who drew the deed from Walter D. Strawn to him, to state the number of acres in the deed, but that the lawyer declined, saying he would get all of lot 1 whether it was fifty acres or one hundred acres, thus leaving the impression that Trainor understood he was buying all of lot 1, without any distinct knowledge of the quality of land he was purchasing. On rebuttal Trainor admitted that before and when he bought

lot 1, Walter D. Strawn told him the lot was sixty-three acres and a fraction, and that he supposed he was buying sixty-three acres and a fraction, and that Walter D. Strawn had always told him so. The original fence between the new lots 1 and 2 was not quite on the true line. In 1893, Trainor employed D. J. Stanford, then county surveyor of Livingston county, to survey this land. He gave the surveyor his deed and told him he wanted to know where his lines were. Stanford made the survey for him and located the lines between said new lots 1 and 2 for him and made a plat of that survey, which was recorded in the county surveyor's records. Soon thereafter, in 1894, Trainor notified Ebersol he wanted to build a new fence on the line between them. Ebersol at once directed Brady, the tenant, to get materials and assist in building a new fence. A fence was so built, jointly, and it was moved slightly from the location of the old one and placed on the line between the new lots 1 and 2 as shown by Stanford's survey. In 1896, Trainor learned that lot 1 of the original government survey contained about eighty acres. The partition proceedings were of record in his county, and showed an allotment to his grantor, Walter D. Strawn, of a lot 1 which contained 63.68 acres. He evidently consulted counsel, for he served upon Brady a written demand for possession, couched in legal language, while he claims that he himself is somewhat illiterate, able to read print but not to read writing. He did not serve this demand on Mrs. Ebersol or her agent. He did not notify them that he thought he was entitled to some land north of the fence so jointly built. Instead of that he sought a conversation with the tenant, and when the tenant told him he had no lease of any part of lot 1, and that Trainor could do as he had a mind to with lot 1, Trainor then determined in his own mind, as he himself testified, that this gave him a right to take possession of sixteen to eighteen acres of land north of this joint fence.

Fifth. When Trainor put this post and wire fence on the land of Mrs. Ebersol, without her consent, it became a part of the realty, and Trainor parted with his ownership

of the materials entering into said fence, and he had no further right thereto. Ewell on Fixtures, 57 *et seq.*

Sixth.  Trainor's possessory right was put in issue under his declaration and the plea of not guilty.  1 Chitty's Pl. 500; Hyatt v. Wood, 4 Johns. 150.

. Seventh.  It seems to us that, stripped of all subterfuges, this is a case where a man took the law into his own hands and attempted to seize, without process of law, sixteen or eighteen acres of his neighbor's land without any right or title whatever, expecting his neighbor would be driven to sue him to recover the land, and that a certain confusion of description would enable him to defeat his neighbor in the action.  The neighbor got back his own without a breach of the peace, and ought not to be compelled to pay damages to the wrongdoer.  The judgment is reversed.

**Finding of Facts** to be incorporated in the judgment:

We find that plaintiff wrongfully entered the land of Theodocia Ebersol and erected a post and wire fence thereon twenty-one rods from the line; that said fence thereby became the property of Mrs. Ebersol; that plaintiff did not acquire or retain possession of the tract of land twenty-one rods wide between his own land and said fence, nor of the land on which he placed said fence; that Mrs. Ebersol and her agents destroyed said fence; that said act is the sole injury for which this suit is brought, and that defendants are not liable to plaintiff therefor.