## The Galena Iron Works Company, Appellant, v. Mary McDonald et al., Appellees.

### Gen. No. 5416.

1. FIXTURES—*what are trade.* *Held,* under the evidence, that certain improvements being of a temporary character and made for the purpose of determining whether ore might be properly mined, were trade fixtures and subject to removal by the lessee or his assigns.

2. FIXTURES—*when cannot be removed.* If the lessee has failed to comply with his lease and abandoned the premises he cannot remove trade fixtures, and a custom of the locality cannot be invoked to change the rights of the parties as fixed by the terms of the lease.

Replevin. Appeal from the Circuit Court of Jo Daviess county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 16, 1911.

SHEEAN & SHEEAN, for appellant.

PAUL KERZ, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

James McDonald owned real estate in the town of West Galena, in Jo Daviess county. On May 16, 1906, he and his wife, Mary McDonald, conveyed the same to J. C. Rankin. The deed was not delivered at that time, but was deposited in a local bank until certain payments were made. On November 19, 1906, the deed was delivered to Rankin and a mortgage securing the deferred payments was executed by him to McDonald. The mortgage was recorded on November 30 and the deed on December 1, 1906. Meanwhile, on October 3, 1906, Rankin executed a lease to Andrew Lockie to prospect and mine the premises. The lease authorized the lessee to mine the land for lead and

zinc ore, and provided that he pay as rental a certain sum on zinc ore, a certain other sum on lead ore, and a certain sum of money; that he carry on mining operations on the land at least ten months in each year; that he erect all necessary buildings and machinery for the purpose of mining and extracting ore; and further that the lease should become ended if the lessee should violate any of its terms, and he should surrender possession of the land and the improvements thereon to the lessor without notice, and the lessor should have the right to the immediate possession of the same; that the lease might be assigned subject to the approval of the lessor. On October 4, 1906, the lease was assigned by Lockie to the Triple Lead and Zinc Mining Co. (hereafter called the Triple Co.) with the consent of the lessor. On December 1, 1906, Rankin, the lessor, and his wife, conveyed the premises to the Pacific Gold Co. On October 30, 1906, a contract was made between the Galena Iron Works Co. (hereafter called the Iron Co.) and the Triple Co. for the building of certain improvements and the installment of certain machinery on the leased premises. Among the machinery to be installed were two boilers. The Iron Co. completed the contract in February or March, 1907. McDonald died testate July 27, 1907. His will gave his wife, Mary McDonald, the life use of the estate, and made her executrix. On October 5, 1907, she filed a bill in the Circuit Court of said county to foreclose the mortgage of November 19, 1906. The bill made Rankin, the Triple Co. and the Pacific Gold Co. defendants. They answered, but claimed no right or interest in the improvements placed on the land. On December 27, 1907, a decree was entered, ordering Rankin to pay to Mary McDonald $6,225.85 and solicitor's fees and costs, and that in default thereof the premises be sold; and that Rankin's equity of redemption be barred unless redeemed according to law. An appeal was prayed to the Supreme Court, but seems not to have been per-

fected. On February 28, 1908, Mary McDonald pur-
chased the land. On July 6, 1909, the master conveyed
the same to her, and on that day she conveyed the part
covered by the lease of October 3, 1906, to William
and Michael Keefe. The Iron Co. was not paid in full
for the improvements placed on the land, and it noti-
fied the Triple Co. it was about to commence me-
chanic's lien proceedings. In September or October,
1908, the Triple Co. sold and caused to be removed
from the premises a portion of the improvements.
About December 20, 1908, the Triple Co. and the Iron
Co. entered into an oral contract by which the Iron
Co. for a certain consideration was to have the im-
provements then remaining on the premises. The Iron
Co. tore down the remainder of the improvements and
carried away the lighter materials, but on account of
bad roads, did not remove the boilers and brick. Dur-
ing the time the improvements were being removed
Mary McDonald was a non-resident of the state and
did not know of their removal. On July 17, 1909, John
T. Slattery, agent of Mary McDonald, hauled the
boilers and brick to Galena, where the Iron Co. on a
writ issued from the Circuit Court of said county, re-
plevied them. The declaration charged the wrongful
taking and the wrongful detention of the boilers and
the brick. Mary McDonald and John T. Slattery filed
a plea denying their wrongful taking and wrongful de-
tention. The cause was tried by the court without a
jury, and it found that Mary McDonald was the owner
of, and entitled to the possession of the property, and
entered judgment accordingly, and for costs of the
suit; and the Iron Co. prosecutes this appeal.

Appellant contends that the improvements were
"trade fixtures" and could be removed by the lessee
or its assigns. Appellee contends that they were a
part of the realty. But if they were "trade fixtures,"
appellant could not remove them; first, because the im-
provements reverted to the lessor, by the lessee's fail-
ure to comply with the terms of the lease, and by the

lessor's breach of the covenants of the mortgage they inured to the benefit of the mortgagee; second, they were not removed during the term of the lease.

The evidence showed that the building erected on the leased premises was about 30x40 feet, 12 feet high, set on 8 or 10 cement piers sunk about 18 inches in the ground; that therein were installed a hoister, an air compressor, a heater and pump and the boilers in controversy, the boilers being set on a concrete foundation and bricked in; that plants of a like character in that mining district were called "prospect plants;" that if sufficient ores were found to warrant the profitable operation of a mine, more substantial improvements were required, but that about 75% of such plants were removed.

The rule by which to determine when chattels become a part of the realty is stated in Chapman v. Union Mutual Life Ins. Co., 4 Ill. App. 29, as follows: "Chattels become real estate when they are annexed to the freehold under such circumstances that it clearly appears from an inspection of the property itself, taking into consideration the character of the annexation, the nature and adaptation of the articles annexed to the uses and purposes of the freehold at the time the annexation was made, and the relation of the party making it to the freehold in question, that a permanent accession to the freehold was intended to be made by the annexation." In case of doubt, great weight must be given to the actual or presumed intention of the parties erecting or placing the articles claimed as fixtures. Dooley v. Crist, 25 Ill. 453; Kelly v. Austin, 46 Ill. 156; Ogden v. Stock, 34 Ill. 522; Sword v. Low, 122 Ill. 487; Baker v. McClurg, 198 Ill. 28; Jones v. Ramsey, 3 Ill. App. 303; Chapman v. Union Mutual Life Ins. Co., *supra.* We feel impelled to hold that the evidence, when considered in reference to the doctrine of fixtures, as stated in the elementary treatise, upon this subject, as well as the current of adjudicated cases in the courts of this state, clearly establishes that the

improvements were of a temporary character, erected by the tenant for the purpose of prospecting for ores, with no intention on the part of the landlord or tenant that the same were so placed as a permanent attachment or accession to the freehold, unless sufficient ore was found to warrant the profitable operation of the mine, and that they were, therefore, personal property or "trade fixtures."

"As between landlord and tenant, improvements put upon the demised premises by the latter for the purpose of trade or manufacture, which can be detached without material injury to the estate, may be removed by him before he quits the possession." Mason v. Fenn, 13 Ill. 525; Sanitary District of Chicago v. Cook, 169 Ill. 184. And if not so done, and there is no agreement to the contrary, the right of the tenant to re-enter the premises and sever the fixtures from the realty will be deemed lost and abandoned. Bush v. Havird, 10 Am. and Eng. Ann. p. 907. The evidence shows conclusively that the lessee had failed to comply with the terms of the lease and had abandoned the premises long before Mrs. McDonald removed these boilers. Therefore, it, or its assigns, had no right to remove them unless justified in so doing by the custom of that mining district. We are of the opinion, however, that such custom could not be invoked to change the rights of the parties as fixed by the terms of the lease.

Again, appellant stood in the place of the Triple Co. by virtue of the purchase of the property from it, but had no title to this property at the time of the foreclosure of the mortgage, nor any lien upon it, so far as appears, and it therefore could not be made a party to the foreclosure. Rankin, The Triple Co. and the Pacific Gold Co. were defendants in the foreclosure suit. They answered, and were defeated by the foreclosure. The decree was carried into effect by a sale and a deed, and all the interests of Rankin and the Triple Co. in the premises and in the "trade fixtures"

left thereon by the Triple Co. when it ceased to perform the terms of the lease, passed to Rankin through the lease and to Mary McDonald through the mortgage. Having had the opportunity to litigate their rights as to this property in the foreclosure case, Rankin and the Triple Co. cannot, in this proceeding, litigate the same question; nor can the Iron Co. who only took, by its contract with the Triple Co., such rights in the premises as Rankin and the Triple Co. had at the time of the contract, which was made about a year after the decree of foreclosure. Under the provisions of the lease, the Triple Co. lost its right to the boilers and brick work, and could not, therefore, transfer such right to the Iron Co.

It is urged that if the fixtures become the property of the mortgagee, her transfer of the premises to the Keefes carried the boilers with it. If that is true, still there was a contract between Mary McDonald and the Keefes that she might remove them and that divested the Keefes of their interest therein. Moreover, the appellant cannot avail itself of any rights the Keefes may have under her deed to them. Defects in Mrs. McDonald's title to the boilers does not authorize appellant to replevy them from her.

The judgment is affirmed.

*Affirmed.*