J. Ward Hopwood, Appellant, v. Sheridon Green and
Raymond Snow, Appellees.

Gen. No. 9,283.

412

Opinion filed April 14, 1941. Rehearing denied June 11, 1941.

C. H. JENKINS and HAROLD M. OLSEN, both of Springfield, for appellant.

THOS. P. REEP, of Petersburg, for appellees.

MR. JUSTICE RIESS delivered the opinion of the court.

Plaintiff appellant, J. Ward Hopwood, has appealed from a decree of the circuit court of Menard county entered against him and in favor of Sheridon Green and Raymond Snow, defendant appellees herein. The case was wrongfully appealed to the Supreme Court and was transferred by that court to this court for review.

A temporary injunction had been granted wherein the defendants were restrained from removing or interfering with certain buildings and fixtures in question which were located on quarry premises owned by the plaintiff, on the ground that they were real fixtures or had in any event been abandoned by the tenant and become a part of the real estate. This was denied by the defendants, who contended that they were removable trade fixtures, had not been abandoned and were owned by the defendants, who had acquired them by virtue of an execution sale under a judgment which they held against W. O. Gibson and W. M. Gibson, who had installed and used them in the operation of a limestone quarry on plaintiff's land under a written lease contract between the plaintiff and lessees, against whom the defendants had procured the judgment for unpaid wages and caused said property to be levied upon and sold by the sheriff of Menard county.

The pleadings upon which issues were joined consisted of plaintiff's complaint in equity, defendants' answer and counterclaim and plaintiff's answer

thereto. The cause was heard by the court and resulted in findings and decree against the plaintiff under the complaint as amended and in favor of the defendants on their counterclaim, from which decree this appeal is taken.

The errors assigned were in substance as follows: That the court erred in not finding and holding thac the buildings and fixtures attached to the soil were the property of the plaintiff and a part of the real estate or in not holding that they were abandoned trade fixtures acquired by plaintiff through default and forfeiture under the lease and surrender of possession of the premises; that the court erred in holding that the same were trade fixtures and had not been abandoned and were acquired and owned by the defendants through valid levy and sale under execution.

It appears from the evidence that the plaintiff Hopwood owned 11½ acres of ground near what is known as Indian Point in Menard county, which tract was underlaid with limestone suitable for quarry purposes. On September 25, 1938, the plaintiff entered into a written lease of the premises with one S. D. Gibson of McLean county for the purpose of installing and operating a stone quarry by the lessee, who with a brother, W. O. Gibson, and son, W. M. Gibson, erected and placed thereon certain structures, fixtures and equipment to be used for that purpose.

The lease was for a term of 10 years, with option of renewal, and provided for the payment of certain royalties as rental. Lessee was to furnish and move at his own expense all necessary buildings, machinery and equipment onto the premises and begin operation within 60 days and to pay plaintiff as royalty 10 cents per ton of rock removed from the premises during the term, and if this did not amount to $2,000 per annum, that amount in royalty was guarantied while the machinery remained on the premises. It was further provided that if the lessee ceased operation of the plant

for a period of 90 consecutive days the agreement, at the option of the lessor, was to become null and void.

The fixtures and buildings in controversy consisted of a scale house, two bins to hold crushed rock and a lunchroom and office. The scales were brought to the premises in a truck from another location at El Paso, Illinois, and installed in the scale house on concrete posts and foundation, in which posts a piece of iron was imbedded, on top of which the scale beams rested loosely. The bins for crushed rock had been taken down and hauled to the plant in sections from El Paso, where they had been used to hold phosphate and were made in three-foot sections set up on floor boards and roofed over. The above were placed partially upon cement and rock on which 2 by 10 floor boards rested and were removable. The scale shed was 7 by 14 feet and was so built that it could be moved on a truck. The lunchroom, 14 feet square, was constructed for the use of the working men and could be sawed in two and hauled on a truck. Plaintiff insisted that they were not made to be taken down; that the removal would leave rock and cement foundations in the quarry; that some of the buildings have been taken down but are still there. There is little material difference in the descriptions of the quarry buildings and its equipment.

The quarry was operated by the Gibsons, W. O. Gibson and his son, W. M. Gibson, called the Indian Point Stone Company, until about the middle of October, 1939, during which time approximately $400 in royalties had been paid, and the plaintiff contended that there remained due and unpaid under the terms of his lease the sum of $1,600 minimum royalties then accrued. It further appears that for wages in the quarry, there had become due from the Gibsons to defendant Raymond Snow the sum of $459.44 and to defendant Sheridon Green the sum of $447.51, for the recovery of which they filed suit and caused a writ of

attachment in aid of suit to issue and levy to be made upon said buildings and equipment by the sheriff of said county on November 7, 1939.

Subsequent to making levy on the property, the sheriff had on the 8th day of November, 1939, made arrangements with the plaintiff to become custodian of the property for him pending disposition of the above suit which was followed by execution sale of the property to the defendant Green on the sixth day of January, 1940. The plaintiff signed a paper duly entitled in that cause agreeing to become such custodian and was told that he would be paid for acting as custodian of the property levied upon and was subsequently paid therefor, which receipt signed by the plaintiff acknowledged that he had received the same on November 7, 1939, as custodian thereof ''to hold for him (the Sheriff) to await such disposition thereof as the Court shall hereafter direct under a writ of attachment in aid levied thereon,'' and which described and itemized the property as ''the following described chattels (giving list) together with the buildings, storage bins, shop tools, office equipment and miscellaneous articles used in operating the Indian Point Stone Company and located upon the land leased therefor of J. Ward Hopwood in Menard County, Illinois.''

Prior to the day of execution sale on January 6, 1940, plaintiff consulted an attorney and a letter was written to defendant Green and his counsel demanding removal of certain of the machinery and equipment from the above premises. On January 2, 1940, the lessees notified the plaintiff that they did not intend to operate the plant any longer and ''have released to you, as your property, the buildings on said premises.'' This was long after their interest in these buildings had been levied upon and held by the sheriff during the month of November. Thereupon, the plaintiff, through his counsel, notified defendant Green and his counsel of record in writing to promptly remove the

machinery and equipment from said premises and therein mentioned one Lipman pulverizer or hammer mill, two elevators, one Twin City tractor, one four-inch water pump with motor, one 1,000 gallon outside gasoline tank located upon the premises owned in fee by J. Ward Hopwood.

It further appears that on April 7, 1939, the Gibsons had executed to one Angelia Hayes a chattel mortgage on all items of property claimed by the defendants, which was recorded on May 12, 1939, securing a $7,000 note due April 4, 1942, describing items of machinery and equipment and "buildings, storage bins, shop tools, office equipment and miscellaneous articles used in the operation of quarry," and which record was contended to constitute additional notice to plaintiff Hopwood of such lien and claim.

Plaintiff stated that in the conversation concerning the custody of the property, something was said about trying to find a lessee for the property and that he agreed that the stuff might be left there for 30 days and later agreed to a 10-day extension; that at the expiration of this period, the defendants started to remove the fixtures and property mentioned in the levy, custodian's receipt and bill of sale under execution. Plaintiff ordered them to stop and to leave the premises, which defendants refused to do, and he filed his complaint and secured a temporary injunction restraining them from going on the premises or removing the fixtures until further order of the court.

The early decisions in England, as well as in this country, were very firm in holding that when personal property became a fixture by annexation to the real estate by some permanent method the personal property lost its identity as such and became real estate. The more modern decisions have broken away from this rule and a more liberal construction is now given in favor of holding fixtures personal property where that intent can be gathered from the conduct or action

of the parties. *Thuma v. Granada Hotel Corp.*, 269 Ill. App. 484; *White Way Electric Sign & Maintenance Co. v. Chicago Title & Trust Co.*, 368 Ill. 482, 14 N. E. (2d) 839; *National Bank of Republic v. Wells-Jackson Corp.*, 358 Ill. 356, 193 N. E. 215; *Sword v. Low*, 122 Ill. 487, 13 N. E. 826.

As between landlord and tenant, improvements put upon the demised premises by the latter for the purpose of trade or manufacture, which can be detached without material injury to the estate, may be removed by him before he quits the possession. *Galena Iron Works Co. v. McDonald*, 160 Ill. App. 211; *Sanitary Dist. of Chicago v. Cook*, 169 Ill. 184, 48 N. E. 461.

Whether or not a tenant or those who hold through or under him have actually discontinued or abandoned possession of the premises often becomes a question of fact to be determined by the intention of the parties as evidenced by their words and conduct.

The giving of a chattel mortgage to become due at a future date upon the fixtures in question is strong evidence that the mortgagor intended and considered the property to be and remain personal property, and the due execution and recording of such mortgage has been held to constitute implied notice to the owner of the freehold of such claim. *Thuma v. Granada Hotel Corp., supra; Sword v. Low, supra.* So, in the case of a writ of attachment. *Hewitt v. General Electric Co.*, 164 Ill. 420, 424, 45 N. E. 725.

The respective parties do not differ materially in their contentions as to principles of law, but have disagreed as to what is shown or proven by the facts and as to the rules of law applicable thereto.

At the time the lease was entered into, there were no buildings, fixtures nor improvements on the quarry tract. All structures, machinery and equipment for the operation of the quarry were put there by lessee at his own expense and were principally moved there from other locations and plants which were operated

under the name of Gibson Construction Company. They were to be used by lessees in conducting the trade and business of quarrying and pulverizing stone to be sold upon a royalty basis. The lease further provided that the lessor might pasture the premises; was in nowise to become responsible for accidents or damage to any person or property that might occur in the lessees' quarry business or operations upon said premises and that the party of the second part further agreed that "while their machinery is on said premises, he will guarantee first party $2000 per year royalty." The lease extended for a 10-year period with option of renewal to the lessee on the same terms.

Sometime after the lease was entered into and operations began, the lessee had executed and recorded a chattel mortgage covering the equipment, fixtures and machinery in controversy, indicating without question his understanding at that time that the buildings mentioned therein were intended to be personal property. The lease itself spoke of the lessees' equipment as "their machinery" and made the royalty payable while the same remained on the premises. This is a rock quarry and its does not appear that the removal of the structures housing the machinery and equipment from their posts or foundations in the quarry would materially injure the freehold. The rule as to trade fixtures between landlord and tenant, arising from the presumption that their annexation was accessory to the trade or calling of the tenant, and not to the land, is another illustration of the rule that the intention with which the annexation is made will control as to whether the article attached has become a permanent fixture or not. *Sword v. Low, supra; Thuma v. Granada Hotel Corp., supra.*

We find and hold that the structures, machinery and equipment in question were and were intended to be trade fixtures, and as such, were removable during the term of the lease, unless the same were abandoned by

the lessee prior to the time of the levy thereon by the defendants under their judgments and executions.

As to the issue of abandonment, it appears that the quarry business was operated until on or about October 21, 1939, when the lessees, who were then in arrears both in their payment of royalty to the plaintiff lessor and to the defendant workmen for wages, indicated their intention to discontinue business. However, theretofore, all buildings, machinery and equipment were held subject to the chattel mortgage lien of record. None of the personal effects, equipment or property of the lessees was removed from the premises nor was any physical change made in the status of the property. The term of the lease had not expired nor had any forfeiture been declared nor possession taken by the lessor under the terms of the lease. There was some talk of making other arrangements concerning refinancing, operating or disposing of the business to other persons. On November 7, 1939, the defendants filed suits to recover their wages and the attachment in aid of suit was levied upon the buildings and property in controversy by the sheriff and later sold under executions on the defendants judgments. The evidence is clear that thereafter, the plaintiff became the custodian of the property so levied upon and acknowledged such status in writing to the sheriff pending the outcome of the defendants' suits and claims against the property. The interest levied upon was the entire interest of the tenant Gibsons.

The plaintiff not only did not claim or assert that he owned the buildings and property at that time or that the same had been abandoned, but on the contrary, he accepted and received pay from the sheriff for caring for the buildings, equipment and fixtures, all expressly mentioned and set forth in his receipt. The sale had been advertised for January 6, 1940. It was not until December 26, 1939, that the plaintiff asserted a claim to the same as real fixtures belonging to and a

part of the freehold by a letter to the sheriff, plaintiff's exhibit No. 4. It was not until January 2, 1940, that the lessees, whose interest was then held subject to the attachment lien of the defendants, undertook to notify the plaintiff in writing that they "did not intend to operate your plant any longer and we have released to you, as your property, the buildings on said premises." All that happened between the lessor and lessee after defendants had levied upon the property and cannot affect the rights of the defendants under the issues herein. After the property was purchased by defendant Green, the right and claim asserted by defendants thereto was still recognized by the plaintiff, who consented to an arrangement whereby the property purchased at the sale was to remain on the premises for 30 days while an attempt was made by the parties to sell defendants' interest for $1,500 and lease the quarry to some other purchaser, which period was later extended for 10 days by agreement of the parties, according to evidence, the weight and credibility of which were matters to be passed upon by the trial court.

It further appears that plaintiff's counsel advised defendants and their counsel by letter specifically setting forth plaintiff's claim, which was not that the buildings had been abandoned but that the same were a permanent part of the real estate. When the defendants, following such notice and claim, undertook to remove the fixtures and equipment which they had purchased, the injunction suit followed and the plaintiff's claim to ownership by abandonment was first asserted in the pleadings after the counterclaim of defendants had been filed and amendment was then by leave of court added to the bill for injunction.

The chancellor, who heard the evidence and whose province it was to judge and weigh the credibility of the testimony of the witnesses in all controverted matters, found that the plaintiff failed to establish proof

of abandonment of the premises prior to the time that the said personal trade fixtures and chattels were levied upon and taken into possession and title thereto acquired under the defendants' writs and judgments. In this holding, we find no error.

We further hold that the trial court did not err in dissolving the temporary injunction and dismissing the plaintiff's complaint for want of equity or in finding the issues for and awarding the property in controversy to the defendants upon their counterclaim.

The decree of the circuit court of Menard county will therefore be affirmed.

*Decree affirmed.*